## DeGraw v. Prior, *Appellant.*

1. **Forcible Entry and Detainer**: PARTIES DEFENDANT: AGENT. A writ of restitution in an action of forcible entry and detainer, will not necessarily be unavailing because the persons who were living upon the land at the institution of the suit were not made defendants. If they were the servants of the person who was made defendant, they can be dispossessed under the writ; and the fact that the defendant does not live in the county where the land lies does not alter the case.

2. UPON an examination of the testimony offered by the plaintiff to prove that he was in possession at the time of the forcible entry complained of, the court is of opinion that it is ample to sustain the verdict, which was rendered in favor of the plaintiff.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

*R. D. Ray* for appellant.

*L. H. Waters* for respondent.

HOUGH, J.—But two questions were pressed upon our

attention at the argument of this case. *First,* Was there any evidence tending to show that at the time of the forcible entry complained of, the plaintiff had such possession of the premises claimed as would enable him to maintain the present action ? *Second,* Was there any testimony tending to show that at the institution of this suit the defendant was in the actual possession of the premises ?

The forcible entry occurred in November, 1868, and this suit was instituted in May, 1869. The question of the defendant's possession, at the institution of the suit, was submitted to the jury under instructions given at his own instance, and their finding is supported by testimony which tended to show that he was, himself, in the actual possession of the premises in dispute sometime in the spring of 1869, and that when he was not personally there during that spring, his servants were. Whether he was there as the agent of his son, for whom he had bought a tax title to the land, or in his own behalf, and whether the servants employed in taking possession and making the improvements were the servants of the defendant, or the servants of his son, were questions which were properly submitted to the jury. It has been very persistently urged that the judgment should be reversed for the reason that a writ against the defendant would be unavailing, inasmuch as he was not living on the land at the institution of the suit, and the persons who were there at that time have not been made defendants herein. Whether other persons who were on the land at the institution of this suit, and who were not made defendants, can be turned out under a writ of restitution against Prior, will depend altogether upon whether such persons were the servants of Prior. If they were, they undoubtedly can be, otherwise they cannot. We do not understand it to be the law that every domestic and day laborer who may be living upon premises in possession of a defendant in an action of ejectment, or unlawful detainer, must be sued in order to make a writ of possession or of restitution against him effectual; nor do

we understand it to be the law that a man who lives in one county cannot be in the actual possession of land by his servants in another county.

We will now consider the plaintiff's possession. In December, 1867, the plaintiff, claiming title under a conveyance read in evidence, employed one Hill to take possession and plow a portion of the land in controversy, during the following season. Hill did not commence plowing until July, 1868, and finding the ground to be very dry and hard, quit after plowing 125 square rods on the land sued for, with the intention, as he stated, of resuming work as soon as the ground should be fit. After this plowing was done, and before defendant entered, plaintiff employed Hill to fence and break up forty acres of the tract. Hill went upon the land in the fall of 1868, to resume the plowing, and found a shanty built by one Dulaney, for the defendant. Hill got out some rails but none were ever hauled upon the land. These facts, it was declared by this court, when this case was here before, (60 Mo. 59,) constituted such possession as entitled the plaintiff to maintain this action. In May, 1868, plaintiff, by contract in writing, sold the land in controversy, viz: the southwest quarter of section 9, township 55, range 22, and the east half of said section to F. D. & C. Webster, for $1,100 cash, $1,100 payable on or before December 1st, 1869, and $1,100 on or before December 1st, 1870, and bound himself to make to said Websters a warranty deed when the deferred payments were made.

The plaintiff testified as follows : " I claimed the land in question, and my purpose in making said contract with Hill to do said plowing was to make a farm on said land; *   *   I claimed to be in possession when the shanty was built on the land by Dulaney in November of that year; I did not put the Websters in possession under said contract or title bond; the breaking or plowing done by Hill on the land in suit, was done in July after the title bond was made; in the spring of 1869, or about

the 1st of May of that year, the Websters took possession of the two other quarter sections embraced in said title bond; the Websters are entitled to the possession of the quarter section in suit if I gain it. Cross examined: When I made the title bond to the Websters I told them to go on the land; I also told them about my contract with Hill about the plowing, and that said plowing would inure to their benefit; when I made the title bond to the Websters they went away, and I told them they could go on the land when they returned; they came back that year or the next; I did not see them until May or June, 1869; they had been here a short time before I saw them, and had made some improvements on the northeast quarter of southeast quarter of said section under said title bond, or were about to commence some. Re-examined: I told the Websters, when I sold to them, that Hill was to plow ten acres and farm forty acres on the land in suit; the Websters never had possession of the land in question."

Dulaney testified that the northeast quarter and the southeast quarter were vacant when he built the house for the defendant, Prior, on the southwest quarter; that he knew the Websters, and that they came to the neighborhood between the 1st and 15th of May, 1869. One of defendant's witnesses testified that Hill, when he was doing the plowing on the land in suit, said "that he came to take possession for DeGraw; that DeGraw had sold to the Websters, and that there was some other claim and he wanted to get possession." The foregoing is the evidence bearing upon the question of the plaintiff's possession, and it is contended by the defendant that it does not tend to show that the plaintiff was in possession when the forcible entry occurred. It is further contended that the Websters should have brought this action and not DeGraw; that at the time Prior entered, the Websters, and not DeGraw, had the actual possession of the land. This argument is based solely upon the statement made by DeGraw, that he told the Websters to go on the land, and that the contract with

Hill for the plowing would inure to their benefit, and it ignores all the other testimony on the subject. It rejects the subsequent statement made by the plaintiff that he told the Websters to go on the land when they returned; and the fact that they returned in the spring of 1869, long after the entry of the defendant. These facts are all entirely consistent, and they corroborate the further statement of the plaintiff that the Websters never were in possession of the land in suit. When they returned and took possession of the east half of the section in the spring of 1869, Prior was in possession of the southwest quarter. It is clear that they were not in the actual possession of the land sued for when Prior entered, by reason of any act done by themselves, and it has been heretofore ruled (60 Mo. 56) that the title bond itself did not give them the possession. We think the testimony is amply sufficient to sustain the verdict, and the judgment will, therefore, be affirmed. All concur.

AFFIRMED.