IRA S. MILLIGAN v. J. RULE FRITTS, Appellant.

Division One, March 1, 1910.

1. **EJECTMENT: Adverse Possession: Theory Submitted by Instructions: Against Defendant's Objection.** Where plaintiff claimed that defendant's claim of ownership based upon his adverse possession for more than ten years, was conditional upon and subject to the ascertainment of the true line between their adjoining lots, and the defendant asked a peremptory instruction, which the court should have given under the evidence, unless there was evidence that defendant's claim of title by use and occupancy was conditional upon the subsequent ascertainment of title, and defendant objected to an instruction submitting that issue, and the court gave instructions for plaintiff upon that theory, defendant had a right to meet that issue, and is not chargeable with having induced the error, and the court on appeal will still decide whether or not that issue should have been submitted, notwithstanding defendant, after his peremptory instruction was refused and his objection to submitting that issue was overruled, asked a proper instruction on the subject.

2. ———: ———: **True Line.** If defendant entered upon the lot and located the fence and barn by mistake and in ignorance of the location of the true boundary line, yet if he had no intention of taking what did not belong to him, the fact that he may have inclosed a larger area than his deed called for would not destroy the adverse character of his possession, if his intention was to claim and hold all that the fence inclosed. But if he located the fence on what he supposed was the true line and intended to claim only to the true line whenever and wherever it might be located, his possession was not adverse.

3. ————: ————: ————: **Facts Showing Intention.** Defendant bought lots 1 and 2 fourteen years before the suit was brought and had occupied them ever since. When he took possession there was a fence and barn where they were at the trial, the fence inclosing a strip of lot 3 from two and one-half feet wide at one end to four feet at the other, and the barn projecting that much over the line into lot 3, and the strip had been cultivated. More than ten years before suit was brought defendant had been requested by the owner of lot 3 to move his fence back, and refused and told the owner he claimed everything within the inclosure as his own, and at the trial he testified that he had always so claimed. His contract of purchase called for lots 1 and 2, and he testified that he bought the inclosure, never had the lots surveyed, never measured it, and did not know the fence was not on the true line. *Held,* that it being admitted the defendant had been in actual possession for more than ten years, the court should have given a peremptory instruction for him.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

Reversed and remanded (*with directions*).

*Barclay, Fauntleroy & Cullen* for appellant.

(1) Occupancy by one coterminous owner is adverse when the evidence shows that he claimed and continuously asserted a line to be the true line, and has held the premises up to it, claiming them as his own. Bisso v. Casper, 14 Tex. Civ. App. 19; Brock v. Bear, 42 S. E. (Va.) 307; Batner v. Baker, 108 Mo. 341; McWilliams v. Samuel, 123 Mo. 659; Brummel v. Harris, 148 Mo. 430. (2) Land is held adversely within the meaning of the law, where a landowner, by mistake, incloses and holds beyond his true boundaries, claiming the premises as his own. Brown v. Lette, 2 Fed. 440; Cole v. Parker, 70 Mo. 372; Mather v. Walsh, 107 Mo. 121; Hamilton v. West, 63 Mo. 93. (3) The uncontradicted testimony in this case shows that the attitude of defendant during the entire statutory period was of such nature as to render his possession adverse

to the true owner; and the court should have directed a verdict for the defendant.

*Fry & Rodgers* for respondent.

There was evidence in the case tending to show that defendant claimed to the fence on the erroneous presumption it was the true line, but with no intention of claiming beyond the true line. In that event, the Statute of Limitations did not run in his favor. McWilliams v. Samuel, 123 Mo. 659; Keen v. Schlendler, 92 Mo. 526; Krider v. Milner, 99 Mo. 149; Skinker v. Haagsma, 99 Mo. 215.

VALLIANT, J.—This is a suit in ejectment filed April 7, 1906, for a strip of land four feet wide at the east end, two and a half feet wide at the west end and 128 feet long, off of the north side of lot 3 in block 5 of Clark's Addition to the city of Mexico in Audrain county; the petition is in the usual form and the answer a general denial.

There seems to have been no dispute about the record title, it being conceded that defendant held the record title to lots 1 and 2 and that the plaintiff held the record title to lot 3, but the plaintiff's contention was that the strip of land in suit was a part of his lot 3, while the defendant's contention was that without regard to what the respective deeds called for the strip in dispute was his by adverse possession for more than ten years. Plaintiff introduced in evidence the plat of Clark's Addition to the town of Mexico laid out in 1855, by which it appeared that lots 1, 2, 3 and 4, block 5, were each sixty feet wide and 128 feet long; the lots run in their numerical order from north to south, all fronting east on Washington avenue; the north line of lot 1 is the south line of Clay street, which intersects Washington avenue at that point. The following diagram conveys an idea of the situation:

```
                                              N.

              CLAY STREET
                                         W
W.             Lot 1                     A
                                         S
               Lot 2                     H
...........................              I
               Lot 3                     N
                                         G
               Lot 4                     T
                                         O   S.
                                         N

                                         A
                                         V
                                         E.
```

The dotted lines indicate the strip of land in dispute.

Plaintiff introduced the testimony of a witness, the county surveyor, which tended to show that by a recent survey made by him, starting in the south line of Clay street at the northeast corner of lot 1, running south along the west line of Washington avenue 120 feet (assuming sixty feet as the correct front measure of lots 1 and 2), the fence of defendant at its front point was four feet south of the south line of lot 2 and therefore encroached that much on lot 3. Plaintiff's testimony also tended to show that plaintiff and those under whom he claimed had for many years paid the taxes assessed on lot 3, and that defendant and

those under whom he claimed had paid the taxes assessed on lots 1 and 2. Plaintiff introduced the record of deeds showing a warranty deed from Warren B. McIntire and wife to defendant, dated February 23, 1898, conveying lots 1 and 2, block 5, Clark's Addition. It came out in the plaintiff's testimony also that defendant's south fence had stood where it was at the beginning of this suit for more than ten years, and that a building of defendant's, which the witnesses called a barn, had for the same length of time stood at the rear of lot 2 obtruding over what plaintiff claims to be the south line of defendant's property, the south wall of the building being on a line with defendant's fence, and that defendant and those under whom he claims had been in open occupation of the land up to his fence for more than ten years.

Defendant's testimony tended to show that the fence, where it was at the beginning of this suit, had stood there for a period of more than fifteen years and the building likewise; that during all that time defendant and those under whom he claims had been in the open occupation of the land included in the enclosure, exercising acts of ownership over it and claiming it as his own; the land except where the building stood was used and cultivated as a garden. Defendant introduced in evidence a contract for the purchase of the property under which he went into possession, dated February 20, 1892. The contract was to the effect that in consideration of $2200, of which $100 was paid and the balance in deferred installments, McIntire and wife, then the owners, agreed to sell and convey the property to defendant as soon as he should pay the several installments into which the purchase money was divided; that on the date of the contract he went into possession and subsequently paid the deferred installments and received the deed called for. The property is described in the contract as lots 1 and

2, block 5, Clark's Addition. Plaintiff does not question the fact that defendant has been in open possession of the strip of land in suit for a period of more than ten years exercising acts of ownership over it, but he contends that during all that time defendant's claim of ownership was conditional, that is, that he claimed it subject to the ascertainment of the true line between lots 2 and 3 whenever that line should be ascertained, and the case, against defendant's objection, was submitted to the jury on the theory that that was the issue in the case.

When we say that the case was submitted to the jury on that theory against defendant's objection we are not overlooking the fact that in one of the instructions given at the request of the defendant that issue was presented, but the defendant had previously asked a peremptory instruction for a verdict in his favor, which the court should have given, even under the plaintiff's evidence, if there was no evidence that defendant's claim of title was conditional on the subsequent ascertainment of the true line. After the court had refused the defendant's instruction and had given instructions for the plaintiff on that theory, thus forcing the defendant to meet that issue, he had a right to meet it and make the best fight he could, without being chargeable with having induced the error if error there was. This case differs in this respect from the case of Keen v. Schnedler, 92 Mo. 516, l. c. 526, where a similar instruction was given and it was contended there was no evidence to support it. The court said: "We do not see how the defendants can well take this position, for they asked, and had given, an instruction involving the same proposition. . . . But there was evidence to support the finding of the jury upon this issue, whichever way they should find."

The first question we have to decide is whether there was any evidence to justify the submission of that question to the jury. Before taking up the evi-

dence on which the plaintiff relies as supporting his claim that there was such evidence, we will look at the law on the subject of a claim of ownership conditioned on the ascertainment of the true boundary line as it has been pronounced by this court.

In Hamilton v. West, 63 Mo. 93, the defense was adverse possession; the evidence showed that their house 'was three or four feet over their boundary line and they had occupied it and claimed it as their own for more than ten years. The plaintiff requested the court to instruct the jury that if defendant's ancestor, when he built the house, did not know where the true boundary line was and by mistake and ignorance located the wall on plaintiff's land, then, although he and those under him occupied and claimed land up to the wall, their occupation was not adverse. The trial court refused to so instruct and this court affirmed that ruling. The court said that if defendant in ignorance of the true line goes beyond it and holds it intending only to hold up to the true line, wherever it might be, the holding is not adverse, but in such case, though he went over his line in ignorance of its true location, yet if he took and held possession claiming up to his wall or fence his possession was adverse, and the court said that to render the possession adverse it was not necessary that they should know that they occupied a part of the lot adjoining their own.

In Walbrunn v. Ballen, 68 Mo. 164, the court after referring to previous decisions, said: "The doctrine deducible from these utterances of this court is, that if one by mistake inclose the land of another, and claim it as his own, his actual possession 'will work a disseisin; but if, ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the land up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the land of the adjoining proprietor, his possession of that land is not ad-

verse.'' That language was quoted and approved in Cole v. Parker, 70 Mo. 372, in which case the defendant who was claiming by adverse possession had by mistake gone over his line, and he testified that he had not intended to inclose any as his beyond the true line, but he did claim what was inclosed. The court said: ''It may have been a mistake, it is true, but honest men always inclose land not their own by mistake or with the consent of the owner, and if the law on this subject were not as this court has held, the Statute of Limitations in such cases would never run in favor of an honest man, because he would never avow his purpose to have been to take the land of another.''

In Skinker v. Haagsma, 99 Mo. 208, it was held that the possession of defendants, though continuing more than ten years, was not adverse because, the court said, ''the uncontradicted evidence is that they so occupied and claimed it under the belief that those fences were on the true line, and without any intention to claim beyond the true line as called for in the deeds.''

In Mather v. Walsh, 107 Mo. 121, the court said: ''The fact that a proprietor of land has taken possession (under a deed) of more land than its description calls for will not prevent his asserting, later, an adverse possession of, or title to, the excess beyond his paper title. Though his original taking may have been the outgrowth of mistake, or in ignorance of the true line, he may, notwithstanding, afterwards begin an adverse holding which the law will recognize when sufficiently long continued.''

In McWilliams v. Samuel, 123 Mo. 659, the defense was adverse possession, but the evidence for defendant was that the fences were set on what was believed to be the true line and the land was occupied up to the fences, but it was occupied with no intention of claiming anything but the right number of acres.

There are other Missouri cases on this subject but those cited above are sufficient to show what the law is. Applying the rules of law as in those cases declared to the case at bar, we may say that the fact that the defendant or those under whom he claims may have entered upon the land and located the fence and barn by mistake and in ignorance of the location of the true boundary line, the fact that they had no intention of taking what did not belong to them, the fact that within their fences they may have inclosed a larger area than what they might have found out their deed called for if they had consulted the plat and had surveyed the lots, would not destroy the adverse character of their possession, if that possession was with the intention to hold and claim all that the fence inclosed. On the other hand, if they located the fence on what they supposed was the true line and intended to claim only to the true line whenever and wherever it might be located the possession would not be adverse.

The testimony shows that the defendant went into possession of the land in February, 1892, and has occupied it as his residence ever since. This suit was begun in April, 1906, more than fourteen years after defendant's possession began. He testified that when he took possession the fence and barn were where they now are, that they were old structures then, and he has since from time to time repaired the fence. The fence and barn were there when the premises were owned and occupied by McIntire from whom defendant bought; how much longer they had been there the evidence does not show with accuracy although one witness said he had seen them there for fifteen or twenty years. The strip in question was embraced in defendant's garden and had been cultivated as such.

Mrs. Crawford, a witness for plaintiff, owned lot 3 in 1891, she conveyed it to her husband, Dr. Crawford, in 1892, and they lived on it until his death in 1898, when it passed by his will to his daughter, who

lived there until she died, leaving it to her daughter,
Mrs. Groves, who lived there until 1903, when she
sold it and moved to Kansas City. Mrs. Crawford
testified that in 1892 a question arose between Mr.
Nichols, who owned lot 4, and her husband, about the
boundary line between lots 3 and 4; the result was
they had a survey made and then discovered that the
fence between those lots was three feet south of the
true line, whereupon Dr. Crawford moved his fence
three feet north to correct the error; then Dr. Craw-
ford went to this defendant and requested him to
move his fence the same distance north to conform to
the survey, but defendant refused to do so, he refused
to have the lots surveyed or to move his fence. That
was in 1892, more than ten years before this suit was
brought.

Mrs. Groves, a granddaughter of Dr. Crawford,
lived with him at the time and knew of the controversy.
Her deposition was taken by the plaintiff, but was
read in evidence by the defendant. She testified to
the same incident that Mrs. Crawford mentioned, but
she went more into detail; she said that when Dr.
Crawford asked defendant to move his fence, he an-
swered that he had no more ground than he should
have and he would not move the fence. "Grandpa
claimed three feet from Dr. Fritts, and he asked Dr.
Fritts for it, but Dr. Fritts refused to move the fence."
Witness heard her grandfather say at sometime he
would make Dr. Fritts move his fence. After the death
of Dr. Crawford witness heard her mother ask de-
fendant to move his fence, but he told her he claimed
it as his own and would not give possession of it.

Thus we see that more than ten years before this
suit was brought Dr. Crawford, the then owner of lot
3, made a demand for the strip of land now in suit
and was positively refused. And we notice also that
the refusal was not put on the ground that the fence
was on the true line, he made no reference to the true

line, he just refused to yield possession of the strip. So the matter rested until 1905 when Mr. Brown, who was then the owner of lot 3, again brought the subject to the defendant's attention and demanded the three feet, but defendant refused, then Brown proposed to have the lots surveyed but defendant again refused, "he wouldn't agree to it at all, wouldn't agree to survey it, have nothing to do with it, and he said all the land inside the inclosure was his and he wouldn't have anything to do with it, and finally I went and had it surveyed myself. . . . Q. And he claimed the fence was the south line of lots one and two? A. I don't think he said that to me; he claimed all the land inside the inclosure." That was plaintiff's own witness.

Defendant in his own behalf testified: "I have always claimed it as mine, all that is inside the fence there, the way I bought it. . . . I bought the property from Mr. McIntire just as it was fenced, north, south, east and west; that was the understanding between us; that was the line and it has remained fenced ever since."

There is nothing in the testimony up to the time of the cross-examination of the defendant himself that gives any support to the contention that it was defendant's purpose to claim only up to the true line wherever and whenever that may be ascertained; but respondent contends that that fact was developed on the cross-examination of defendant himself; it therefore becomes necessary to quote literally so much of the cross-examination as bears on that point:

"Q. You never bought or got a deed for any part of lot three? A. Not that I know of, no, sir. Q. And you have never paid any taxes on lot three? A. No, sir, not that I know of. Q. And you have never claimed lot three? A. No, sir, never have. Q. Nor any part of it? A. No, sir, no part of it; I simply claimed my inclosure as I bought it. Q. You never had your lots

surveyed?' A. Never have. Q. Then 'when you went in possession of your land there, when you bought that land and went in possession of lots one and two you didn't know where your north or south line was? A. Yes, sir, I knew it by the fencing on it. Q. You know now the fence is not on the south line do you not? A. No, sir, I do not; I know it is on the line of the premises I bought. Q. You know the fence is not on the true line between lots two and three, don't you? A. I do not. Q. Don't you know you have more than a hundred and twenty feet north and south there? A. I do not; I never measured it in my life and never had it measured. . . . Q. Well, a hundred and twenty feet is all you bought? A. No, sir. Q. All you have a deed for? A. I bought the inclosure there simply as it was inclosed. Q. You knew your deed didn't call for that inclosure? A. It calls for two lots. Q. Sixty feet across? A. I don't know whether it says sixty feet across. Q. I believe the first thing you got from Mr. McIntire was this contract of February 20, 1892? A. Yes, sir. Q. And you held possession under this contract of the land described until you got your deed? A. Yes, sir. Q. And since that time you have held under your deed? A. Yes, sir. . . . Q. When you bought this land you didn't know where the true line was between lots two and three, did you? A. I didn't know anything about the lines; the fence was considered as the line and that's the way I bought it. Q. But you never—when you bought the land and took possession you never intended to claim more than you bought, did you? A. No, sir, and never have yet either. Q. And you bought what? A. I bought what was in the inclosure.'' The last question and answer were on redirect-examination.

The evident aim of the cross-examination was to force the defendant to take the position before the jury of either admitting that he never intended to claim ownership further than to the true line wherever and

whenever it might be located or else to confess that he intended to claim what did not belong to him. Counsel for respondent in their brief say: "It is evident that Dr. Fritts (the defendant), before going on the witness stand, had informed himself as to the law of adverse possession, and it looks as though he had intended to give no evidence that could be used against him." If the witness had technical knowledge of the subject of adverse possession, he had, in that respect, no advantage of the learned counsel who conducted the cross-examination. His answers were not evasive or equivocal and on the face of the record we see no cause to question his honesty. Under a skillful cross-examination a less enlightened witness not fully comprehending the real purport of the question might, by merely answering yes or no, convey an erroneous idea. It was attempted to put a construction on the testimony of the defendant in the case of Cole v. Parker above cited, who had testified that he intended to claim only to the Government line but claimed that the middle of the road was the Government line, which is now sought to be put on the testimony of this defendant, but the court said if such an effect was to be given to the testimony "the Statute of Limitations in such cases would never run in favor of an honest man, because he would never avow his purpose to have taken the land of another." In the case at bar the defendant said he claimed only the lots he bought, but he claimed that those lots embraced all that was within his inclosure. The defendant's deed (or the contract of purchase rather, the full deed not appearing in the record) calls for lots one and two, it does not give the width or length of the lots, one would have to go to the plat to find that information, but even if the deed had said the lots were sixty feet front, if the defendant bought, as he says he did, understanding that the fences marked his boundary lines and he claimed to the fences regardless of

whether they were correctly located, and has so held for more than ten years, his holding would not be cut down now because it might turn out on measurement that he had more front feet than his deed called for. It was so decided in the case of Mather v. Walsh above cited, where the deed called for so many acres and the defendant had by mistake taken possession of a larger area. There is nothing in the cross-examination of defendant to indicate that he ever intended to limit his claim of ownership to the true boundary line when discovered; all the testimony is to the effect that he claimed as his own all that was inclosed by his fences. Even the testimony, on the part of the plaintiff showed the adverse character of defendant's possession. More than ten years before this suit was filed the then owner of lot three complained to defendant that his fence was three feet over the true line and asked him to join in a survey and move the fence, but defendant refused, and asserted claim to all within his inclosure.

Defendant's title by adverse possession being clearly established the trial court ought to have given a peremptory instruction for a verdict in his favor.

The judgment is reversed and the cause remanded with directions to the circuit court to enter judgment in defendant's favor. All concur.