[Civ. No. 6215. First Appellate District, Division One.—April 3, 1928.]

J. A. FERBRACHE, Appellant, v. STEPHANNA POTTER et al., Respondents.

Hugh K. McKevitt and Fry & Jenkins for Appellant.

W. F. Cowan, C. L. Witten and William H. Johnson for Respondents.

CAMPBELL, J., *pro tem.*—This is the second appeal in this action. In the former appeal (*Staniford* v. *Trombly,* 181 Cal. 372 [186 Pac. 599]), the court held that the evidence did not sustain the findings; that the findings that there had been a boundary agreement, and that plaintiff was estopped to deny defendants' title, or that defendants had acquired title by adverse possession were not sustained. The judgment was reversed, and the action went back to the lower court to be retried. It was retried and is now here on appeal from a judgment again entered in favor of defendants on the second trial.

When the action was tried the second time it was tried upon the same pleadings of the first trial, and upon the same points that had been made and presented upon that trial. The defendants continued to contend that a boundary line agreement had been made with respect to the lands in controversy; that plaintiff was estopped to controvert defendants' title to the property in controversy by virtue of the boundary line agreement and by virtue of long acquiescence in defendants' claim of title by adverse possession and by adverse possession. In addition to these claims, made on the former trial, the defendants sought in the second trial to establish their actual record title to the disputed area.

Plaintiff and defendants own adjoining lands, plaintiff to the south and defendants to the north. The basis of plaintiff's contention is his deed, which fixes the north line of the land granted to him as the line from S5 to ¾ inch iron pipe (H Flag) and from S5 easterly to F1—¾ inch iron pipe is a point on the southerly line of the Solis Rancho 80 ch. from S34—S5, ¾ inch iron pipe, and F34 are all fixed points and S5 is a patent corner, a government mark.

The above is the description in the original deed from Moore to Matthis. Subsequently the same description is repeated in deeds from Matthis to Riddell, from Riddell to

Riddell, from Riddell to Staniford and from Staniford to plaintiff and is fairly well authenticated and not controverted by any evidence in the chain of title, but is controverted by the deed from Moore to Gano.

On October 6, 1859, Moore conveyed to Gano the lands along the westerly or southerly side of the Solis Rancho from point S7 a distance of 122 chains, which, according to McMillan's testimony and the findings, overlap the lands conveyed to Matthis on January 30, 1861, and afterward conveyed to Riddell, plaintiff's predecessor. In other words, Moore conveyed to Gano lands he afterward conveyed to Riddell's predecessor, according to the testimony and map of McMillan. This Gano's deed is in a distinctly different line of title. His land was afterward sold under execution sale to one E. Auzerais and found its way afterward into the hands of one A. J. McKerron under descriptions which merely referred to the Auzerais deed. The effect of the finding is to accept as binding the course and call of the Gano deed and to discard the course and call of the Matthis deed. The Gano deed is not in the line of plaintiff's title. Even if correct, it is a finding merely that plaintiff is not the owner of the disputed area. As a finding that defendant is the owner it is without support, for if Moore could not convey land which he had already conveyed to Gano in 1859 to Matthis (plaintiff's predecessor in interest), in 1861, he could not convey to Arthur (defendant's predecessor in interest) in 1867.

If we concede that Gano and his successors held the legal title to the land in dispute, or a part thereof—with which title, however, we are not concerned—still Matthis' deed antedates Arthur's deed and is, therefore, superior. "An action under section 738 of the Code of Civil Procedure to determine adverse claims, or, as it is usually termed, an action to quiet title, may be maintained to determine which party has the superior equity" (*Tuffree* v. *Polhemus,* 108 Cal. 670 [41 Pac. 806]; *Buchner* v. *Malloy,* 155 Cal. 253 [100 Pac. 687]).

This disposes of the only question presented on this appeal which was not urged on the former appeal. If, therefore, upon the retrial of the case there was not the additional evidence produced requisite to establish the agreed boundary line as claimed, that plaintiff was estopped by virtue of long

acquiescence to controvert defendants' title, or that defendants have acquired title to the area in dispute by adverse possession; the judgment must again be reversed. On the other hand, if the necessary evidence was presented which was lacking in the former trial, the judgment should be affirmed.

Respondents in their brief do not contend that the evidence offered in the second trial on the question of estoppel differs from that introduced in the first trial, or that any additional evidence was presented to establish the claim of estoppel, which evidence the reviewing court on the former appeal held lacked the essential element of estoppel, namely, false statements or concealments, respondents contenting themselves with directing our attention to two points only— other than the new one discussed—namely, "agreement as to boundary line" and adverse possession.

As to the question of an agreed boundary line, respondents set forth in their brief the testimony of George Arthur Trombly as supplying the necessary facts lacking in the former trial, and have directed our attention to no other testimony or evidence that the boundary line between the lands of the parties was uncertain and disputed and that the line claimed was agreed upon as the true boundary line. The testimony of George Arthur Trombly set forth in respondents' brief is as follows: "There was a fence there prior to the time the picket fence was built to keep my stock separate. It started up and passed close to Tree 5 and run down to what is designated as the 'Big Rock.' There was the old fence that was marked between two places. That was put up to keep Riddell's stock out and Arthur's stock inside. It run from somewhere in the locality of Tree 5 down to where it is marked here as the 'Big Rock' and after my father moved up on to the place then they established the line through here."

Respondents further quote from the testimony of the same witness as additional evidence produced that a boundary line agreement had been entered into between the predecessors in interest of plaintiff and defendants as follows: "The picket fence was built about 1876 or 1878. I worked on a part of the fence myself. My father and a hired man, my brother and I built part of it, and an old German fellow that lived there, by the name of Ossity, built the rest of it

for Mr. D. C. Riddell (predecessor in interest of appellant). The picket fence started from Tree 5; I don't know how far it extended toward the southern boundary of the Solis Rancho. I don't know the exact distance at the end of it but it was a picket fence and partly a brush fence up to within 150 to 200 yards of the Solis and Las Animas grant. The brush fence was supposed to be straight with it where the picket fence is. The place where the brush fence ended was brush and rocks and heavy timber; too rough to build anything but a brush fence. It was supposed to be in a straight line with that fence and as a continuation of the other as I marked the line that is supposed to be here. I didn't help build it but I helped my father work on the fence, but the brush fence this man Ossity and his son and a hired man was the ones that did the work on it to the end of it."

With this addition to the evidence the court found, as it did in the former trial, that the fence was not built upon an agreed boundary line to settle any dispute, uncertainty, or controversy arising concerning the true dividing line, the court finding: "That at the time said fence was built, and also for some time before then, the stock owned by one or the other of said parties would wander or stray over the land of the other, causing annoyance or trouble both to the owner of the land and to the owner of the cattle, and that to prevent this annoyance or trouble Dewitt C. Riddell and Peter Trombly agreed to build a fence to prevent the straying of the stock, and that a certain line was agreed upon, upon which to erect this fence both by Dewitt C. Riddell and Peter Trombly, the former to build the south half of said fence and the latter to build the north half thereof; and that agreeable to this arrangement and in either the year 1876 or in the year 1877 or in the year 1878 the fence was built by said Dewitt C. Riddell and said Peter Trombly upon such line. Said fence was not built upon an agreed boundary line between the Riddell tract and the Trombly tract to settle any dispute, uncertainty or controversy arising over or out of the true location of the dividing line between the said two tracts of land." It is true that the court also found, as it did at the first trial: "That the true location of the boundary line between the Riddell tract and the Trombly tract was uncertain at the

time the fence line was so located, and that said parties intended to locate the true line between them."

The finding that the fence was built to prevent the straying of stock from one tract to the other and was not built upon an agreed boundary line to settle any uncertainty arising over the true location of the dividing line is inconsistent and irreconcilable with the finding that the parties intended to locate the true line between them. "Where there are contradictory findings about matters material to the merits of the case and the determination of which one way or the other is essential to the correctness of the judgment, there the judgment cannot stand (*Learned* v. *Castle,* 78 Cal. 459 [18 Pac. 821, 21 Pac. 11]). No judgment can properly be entered where the court finds both for the plaintiff and the defendant on a material issue" (*Fanta, etc.,* v. *Maddex,* 80 Cal. App. 513 [252 Pac. 630]).

█ It is useless, however, to pursue this discussion further, as this question was determined on the former appeal and unless the evidence here quoted establishes the fact that the dividing line was uncertain and the parties erected the fence intending to locate the true dividing line between their respective tracts, this question must again be determined adversely to respondent. In the testimony of George Arthur Trombly, above quoted, all that has any bearing on the intention of the parties to establish the true dividing line is contained in the statement: "There was the old fence that was marked between two places. That was put up to keep Riddell's stock out and Arthur's stock inside. It run from somewhere in the locality of Tree 5 down to where it is marked here as the 'Big Rock' and after my father moved up on to the place then they established the line through here." This evidence falls short of being sufficient on which to base a finding "that the parties intended to locate the true line between them," and does not add anything material on this question to the record presented on the former appeal; and further, the finding that "said fence was not built upon an agreed boundary line between the Riddell tract and the Trombly tract to settle any dispute, uncertainty or controversy arising over or out of the true location of the dividing line between the said two tracts of land" is supported here, as it was in the former record on appeal, by the evidence. "The mere acquiescence in the

existence of the fence and the occupancy of the land to the north of it would not amount to an agreement that it was on an accepted boundary line. And the large area of the irregular parcel subtended by the fence and the creek to which it extended would go far to indicate that the builders of the fence were fixing a line 'for occupancy and not for title' '' (*Staniford* v. *Trombly*, 181 Cal. 372, 375 [186 Pac. 599, 600]).

As to defendants' claim of title by adverse possession, there is no evidence that they paid all taxes levied or assessed upon the land claimed. It was stipulated and conceded at the trial that the records of the assessor's and tax collector's offices show that practically every year from 1874, 1875 to 1909, 1910 the property has been described in such an uncertain manner that it is impossible to ascertain what line bounds the northerly or westerly boundary of the Riddell tract or the southerly or easterly boundary of the Trombly tract. The northerly or westerly line of the Riddell tract is bounded in the assessor's record by the land of Trombly, while the southerly or easterly line of the Trombly tract is bounded in said record by the land of Riddell or Riddell Bros., and Riddell paid taxes on 565 acres of land and Trombly paid taxes on 200 acres of land, the acreage called for respectively in their deeds. Our attention is directed by respondents to the testimony of George Arthur Trombly as establishing payment of taxes on the area in controversy as follows: ''I paid the taxes on it (area in dispute) ever since 1898.'' This statement ''area in dispute'' inserted parenthetically by the author of the brief is not borne out by the record. The witness testified: ''I can locate the *twenty acres* that was conveyed from Lydia L. Trombly and William T. Trombly to George A. Trombly . . . I paid the taxes on it ever since 1898 . . . In Solis Rancho twenty acres of land, bounded north by Trombly (reading receipt No. 8889). That's the piece right there. Q. 8889 assessed to George Trombly. It seems to be described twenty acres of land (reading). A. That is the same one. There is some places they call it bounded by Trombly and some by the Watsonville road.''

The area of land in dispute, according to the testimony of plaintiff's surveyor Herrman, contains about 165 acres, and the surveyor McMillan, called by defendants, testified

that it "includes near thirty acres in there, somewhere in there, roughly speaking. Of course, I would like to have the privilege of correcting that if it is not the correct amount because that is assumed." It is therefore apparent that if the 20 acres upon which George Arthur Trombly paid the taxes evidenced by tax receipt No. 8889 and which sometimes is described as bounded by Trombly and sometimes by the Watsonville road, as stated by George Arthur Trombly, is included in the area in dispute, he did not pay taxes on the entire tract in controversy. We are unable, however, from either map printed in the transcript—one introduced by plaintiff and the other by defendants—to locate this 20 acres. It is not material, however, as the court found that "after said deed was made by John H. Moore to said George T. Arthur (Trombly's predecessor), every assessment made to George T. Arthur or to the said Peter Trombly, or to his successors in interest, in each case stated that the lands being assessed were two hundred acres; and the court finds that the deed from the said John H. Moore to George T. Arthur (Trombly's predecessor) included an acreage of two hundred acres, without including parcels 'A' or 'B' (area in dispute)" and also found that "neither George T. Arthur nor Peter Trombly, nor any of their, or either of their, successors in interest ever paid any taxes at any time on any land which was not expressly bounded on the south by the land of Dewitt C. Riddell or Speer Riddell (plaintiff's predecessor) or the successors in interest of said Dewitt C. Riddell and Speer Riddell or by one of them." The court thus found that after the deed to Arthur every assessment made to Arthur or Trombly stated the lands being assessed were two hundred acres, and that the deed to Arthur included two hundred acres without including any portion of the disputed area, and such finding is supported by evidence and the stipulation as to the assessments. The defense, therefore, here as on the former appeal, must fail "because defendants and their predecessors paid taxes on property comprising but two hundred acres (the amount of land called for in their deeds), and appellant and his predecessor in interest paid taxes on 565 acres, which must have included the land here in dispute. The defendants, therefore, do not hold title by adverse possession." (*Staniford* v. *Trombly, supra.*)

As to appellant's assigned error of law, that the court erred in overruling the objection of plaintiff to the testimony of George Arthur Trombly given to show an estoppel, it may be said that, while such evidence does not establish an estoppel the testimony complained of was admissible in support of defendants' claim of adverse possession, as it dealt with the use of the land by defendants.

What has been said renders a discussion of appellant's second assignment, that the court erred in permitting the witness McMillan to testify concerning the "Auzerais line," unimportant.

We find no evidence in the record calling for a different ruling than that made on the former appeal. The judgment therefore is reversed.

Tyler, P. J., and Knight, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court, on May 31, 1928.

All the Justices concurred.