88 P.2d 277

**WARD v. RODRIGUEZ et al.**
**No. 4436.**

Supreme Court of New Mexico.

March 1, 1939.

Writ of Certiorari Denied May 15, 1939.

See 307 U.S. 627, 59 S.Ct. 837, 83 L.Ed. 1511.

J. H. Paxton, of Las Cruces, for appellants.

R. R. Posey, of Las Cruces, for appellee.

MABRY, Justice.

Appellee, E. A. Ward, plaintiff below, relying for title upon a tax deed from the treasurer of Dona Ana County, of the date of January 11, 1937, filed his complaint in ejectment against appellants and defendants below, seeking a determination of title to a disputed strip of land of some eleven acres, lying between the two properties, and which disputed strip clearly belonged to and was a part of the property and eighty acre tract claimed by appellants or to that adjoining eighty acre tract claimed by appellee.

We shall hereafter give the parties the designations they bore in the court below, that of plaintiff and defendants.

Plaintiff claimed the land because included within the exterior boundaries, ac-

cording to government survey and description, of the land granted by his tax deed, acquired in 1937 by purchase from the State. Defendants asserted title, and defended upon the ground that the original survey of the properties, and particularly that proper establishment of the north to south medial line of the two properties places the disputed strip within the boundaries of his land, and if not, that the strip becomes his nevertheless by virtue of his having acquired title thereto by adverse possession. Judgment was for plaintiff and defendants appeal.

The plaintiff and defendants each own two forties, lying opposite to and adjoining each other, appellants' to the west and appellee's to the east.

Recent surveys of the property lines put the disputed strip within the exterior boundary of plaintiff's eighty acre tract. The court found these surveys to be an accurate and proper location and fixing of the medial line as it was originally located and fixed by the first government survey of 1882, and as it should be now.

Two principal questions are here presented. First, whether the re-survey of the common boundary, and thus the location of the north to south medial line, as plaintiff contends it should be and has at all times been established, properly fixes and establishes the common boundary line between the two properties, having regard for the original government survey of 1882, under which defendants claim their vested right. And, second, whether,

in any event, defendants' claim to the disputed strip of land had not within time, and prior to forfeiture for delinquent and unpaid taxes on the tract from which the strip would have been carved, ripened into good title by adverse possession. Defendants rely upon the construction and maintenance of a line fence, their open and notorious claim to and use of the land in question over a period of some twenty years and payment of taxes, as the alternate basis for their title, if it be found that the questioned acreage is in fact within the plaintiff's tract by correct survey description.

The court made findings of fact and conclusions of law approving the survey upon which plaintiff relies and holding that defendants had no title to the strip in question, upon any theory or ground.

We examine the record to determine: (a) Whether the court's findings of fact are supported by substantial evidence; and (b) whether the law has been correctly applied.

Defendants claim that the proof offered by plaintiff, establishing the line he would rely upon is not, in the first place, established with sufficient certainty to support the judgment; that, in any event, the re-survey was not definitely shown to be a mere relocation of old monuments, corners and lines established by the survey of 1882, and that they could not be deprived of the land originally granted to them by their homestead patent, by a change of

location or restriction of area by a subsequent survey.

We hold, however, that there is substantial evidence to support the court's findings that the government re-survey is nothing more nor less than a relocating of monuments and lines and a redetermination of distances, with "adjustments" for overage and shortage as is the approved practice in all such surveys. The evidence further shows that at least three private surveys were subsequently made of the land in question, and after the dispute arose, and from none of these was there any conflict with the government re-survey shown, two of them, in fact, corresponding. No testimony was offered as to another private survey made at the request of defendants. It may be fairly assumed that it likewise showed no conflict with the testimony of witness B. B. Romig, upon whose testimony and survey the court rested its findings. The court found upon this point: "That based upon locations of monuments under the original survey the proper line dividing the properties of the parties in question is where the plaintiff claims the line to be."

■ We recognize the rule to be that the government has the right to re-survey public land, as corrective and as a retracing, but such survey will be construed to have and follow the lines of the original U. S. survey where it would affect bona fide private rights held under such original survey. U.S.Code Ann., Tit. 43, § 772; Cragin v. Powell, 128 U.S. 691, 9 S.Ct.

203, 32 L.Ed. 566; Lane v. Darlington, 249 U.S. 331, 39 S.Ct. 299, 63 L.Ed. 629.

■ We hold that the evidence supports the finding of the trial court that the land in question as re-surveyed is the same land and with the same boundaries as that granted under the original government survey of 1882, upon which survey defendants rely.

As to point and question No. 2: Plaintiff contends that in no event have defendants established title by adverse possession, even as to the original owners, and even before, and regardless of the tax sale.

■ Defendants, of course, have under the government patent, color of title as to their eighty acres adjoining, and this is a requirement of both our limitation statutes of one claiming title by adverse possession. Sections 83-119 and 83-122, Comp. Stat.1929; Jackson v. Gallegos, 38 N.M. 211, 30 P.2d 719.

■ Defendants, if they are to establish title by adverse possession, must found their rights upon the authority of Section 83-122 of the Comp.Stat.1929. This is a general statute of limitation, as distinguished from Sec. 83-119, Comp.Stat.1929, which applies to property acquired within a Spanish or Mexican land grant. Montoya v. Unknown Heirs, 16 N.M. 349, 120 P. 676; Bradford v. Armijo et al., 28 N.M. 288, 210 P. 1070; Jackson v. Gallegos, 38 N.M. 211, 30 P.2d 719. Under Sec. 83-122, supra, we have the legislative definition of adverse possession, which is:

" 'Adverse possession' is defined to be an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another; and in no case must 'adverse possession' be considered established within the meaning of the law, unless the party claiming adverse possession, his predecessors or grantors, have for the period mentioned in this section [ten years], continuously paid all the taxes, state, county and municipal, which during that period have been levied upon the land or interest claimed, whether assessed in his name or that of another."—Sec. 83-122, supra.

■ In the absence of statutory requirement to that effect, it is not incumbent upon one who claims title to land by adverse possession for the limitation period, to prove payment of taxes. 1 R.C.L. 701, Sec. 12. But, our statute controls here and the payment of taxes is an essential requirement.

Have defendants met the tax paying requirements? This question need not be discussed at length since other issues hereinafter discussed are decisive of the case. We might point out nevertheless that, while this court has never passed upon the question of what constitutes having "continuously" paid all taxes as required by our statute, the United States Circuit Court of Appeals for this, the 10th circuit, has done so, and it is by that court held that the taxpayer is not by this term enjoined to pay "regularly," "promptly," or "before delinquency," but that payment of all the taxes at any time before foreclosure and forfeiture to the state, or before sale to an outside purchaser satisfies the statute. United States v. Wooten, 40 F.2d 882; Pueblo de Taos v. Gusdorf, 50 F.2d 721.

The record in this case contains no evidence upon the question of how or when the taxes were paid. We have only the statement by defendant Bernardino Rodriguez that "I paid all the taxes." It is quite apparent that in the court below, the court and all parties were attaching but little importance to the defense of title by adverse possession. All there seemed principally concerned with the main defense urged, which was that defendants, after all, had placed their fence upon the true boundary line, and that evidence of the survey upon which the court relied was so lacking in probative force as to be valueless.

So, whether by the statement "I paid all the taxes," defendant intended to and did sufficiently establish payment upon any land within the meaning of the statute, and particularly upon the eleven acre strip in question (if in fact, payment upon the disputed strip in addition to payment upon the principal tract owned by defendants would be required), we do not decide. Likewise, we pass the question of whether, defendants having shown color of title by their government patent to their eighty acres, have therefore met the statutory requirement in this respect as to the ex-

cessive strip claimed. That is to say, whether proof of adverse possession of the land in dispute must itself have the sup-porting element of color of title, aside from that affecting the eighty to which it would be attached.

We come now to the question of whether defendants have shown title by adverse possession as defined by our statutes, or whether, upon the theory of having established the boundary line by agreement or acquiescence on the part of the adjoining owners, they can prevail.

There is no evidence that plaintiff's predecessors in title, or any of them, ever discussed with defendants or anyone else, the question of the true boundary line between the properties, or, that they or any of them ever actually recognized the fence in question as properly marking such line.

█ The burden is upon defendants, if they would rely upon the theory either of acquiescence in a long established dividing line, or an agreement to fix a disputed line. We search the record in vain for evidence in support of either theory.

"One who proves occupancy, but who does not show that the adjacent owner ever agreed to the boundary line claimed, or that he was aware of the occupancy or that the location of the division line was a matter of dispute or agreement between the parties, does not establish a boundary by acquiescence." Fitzimons v. Atherton et al., 162 Cal. 630, 124 P. 250.

In the case of Ferbrache v. Potter et al., 90 Cal.App. 582, 266 P. 334, 336, the court points out that parties may appropriately fix "a line 'for occupancy and not for title,'" and further says, that: "The mere acquiescence in the existence of a fence and the occupancy of the land to the north of it would not amount to an agreement that it was the accepted boundary line." See, also, Raney v. Merritt, 73 Cal.App. 244, 238 P. 767.

█ The burden of proving title by adverse possession is on him who asserts it and all presumptions are in favor of the holder of the legal title. Buchanan v. Nixon, 163 Tenn. 364, 43 S.W.2d 380, 80 A.L.R. 151.

One who claimed title to a quarter section of a certain number and who was in possession of a part of another quarter, under the mistaken belief that it was a part of the quarter which he claimed, his possession of the part of the other quarter is not adverse possession. Fisher v. Muecke, 82 Iowa 547, 48 N.W. 936.

Locating fence and intending to claim only the true line as he supposed it to be, is not adverse possession. Milligan v. Fritts, 226 Mo. 189, 125 S.W. 1101.

"The intention with which the possession is taken and maintained is controlling factor in determining its adverse character." 1 R.C.L. 731.

"A few decisions hold, without qualification that one who, through misapprehension as to boundaries of his land, occupies and

possesses land of another for the statutory period thereby acquires title by adverse possession to such land. Nevertheless, according to the great weight of authority, when occupancy of the land is by a mere mistake and with no intention on the part of the occupant to claim as his own land which does not belong to him, but with the intention to claim only to the true line wherever it may be, the holding is not adverse." 2 C.J. 139, Secs. 242, 243.

It is apparent from the testimony of defendant Bernardino Rodriguez himself, that he never fenced the land intending to claim beyond the true boundary. He said the lines were pointed out to him and he undertook to build the fence in question in line with the fences of his neighbors both to the north and the south. He was clearly trying to build on the true line and not to make an appropriation of the land of his neighbor. The fact that he now insists upon his old fence line being the true line under the original survey shows clearly that fixing the line as he did was under a mistake of fact as to the true lines, and did not grow out of any agreement, or acquiescence by or dispute with the adjoining owners. Defendants tried to place their fence on the true line and still maintain they have done so. The trial court properly found they had not done so.

■ So, the principle of acquiring title by adverse possession, or upon a theory of agreement, estoppel or acquiescence in such fixing of the boundary line, are all out.

Defendants thought their fence was upon the proper and true line. The record throws no light upon the attitude of any of plaintiff's predecessors in title, the adjoining owners, during any of the time, but we must assume, in the absence of proof, that they never understood that defendants were intending to claim beyond the true line. Title is not acquired in this way.

The trial court properly gave judgment quieting title in plaintiff, and the same is affirmed, and it is so ordered.

BICKLEY, C. J., and ZINN and SADLER, JJ., concur.

BRICE, J., did not participate.