[No. 1639, July 15, 1914.]

# BOARD OF TRUSTEES OF CEBILLETA DE LA JOYA GRANT v. BOARD OF TRUSTEES OF BELEN LAND GRANT.

[On Rehearing, March 10, 1915.]

## SYLLABUS BY THE COURT.

1. A confirmation by the Court of Private Land Claims was to be always subject to, and was not to affect, any conflicting private. interests, or claims held adversely, but to operate only as. a quitclaim or release of all claim of title by the United States.                          P. 152

2. A judgment or decree set up as a bar by plea, or relied on as evidence by way of estoppel, must have been made by a court of competent jurisdiction upon the same subject-matter, between the same parties for the same purpose.                              P. 156

Appeal from District Court, Socorro County; Neblet, Judge.

Action by the Board of Trustees of the Cebilleta de La Joya Grant, for the benefit of the owners in common thereof, against the Board of Trustees of the Belen Land Grant. From judgment for defendant, plaintiff appeals. Affirmed.

NEILL B. FIELD of Albuquerque, for appellant.

The Court of Private Land Claims had jurisdiction of the original petition of Felipe Peralta and Tomas Cordoba for the confirmation of the grant.

6 Fed. Stats. Ann. 54..

As to what constitutes jurisdiction see Brougham v. Oceanic Steam Nav. Co., 205 Fed. 856.

Therefore the Court of Private Land Claims was acting within the letter of the authority of the law and its act had the effect of finding that the owners of the grant held it by a perfect and complete title, and the legal status of the property, held under a Spanish or Mexican title, was not in any sense inferior to the tenure under a perfect American title at the same date.

Territory v. Delinquent Taxpayers, 12 N. M. 62, 65.

Under the provisions of the Gadsden Treaty, the jurisdiction of the Court of Private Land Claims to confirm a grant depended on the location of the grants.

Ainsa v. United States, 161 U. S. 208; Ely's Admr. v. U. S., 171 U. S. 220; Arivaca Land Co. v. U. S., 184 U. S. 649.

The letter of the act creating the Court of Private Land Claims having committed to that court the location of the boundaries of the grant, the original decree of the court fixing the boundaries amounts to a judicial determination, as between the petitioners and the United States, that such were the true boundaries.

U. S. v. Coe, 155 U. S. 76.

Defendant had an election of staying out of the Court of Private Land Claims and litigating the question of title to the ground in conflict in the ordinary courts, but having invoked the jurisdiction of the Court of Private Land Claims and the action of that tribunal eliminating more than 30,000 acres of land in conflict, it cannot reserve to itself the right to litigate in the court below as to the remaining 11,000 acres.

6 Fed. Stats. Ann. 54; Brougham v. Oceanic Steam Nav. Co., 205 Fed. 856; Territory v. Delinquent Taxpayers, 12 N. M. 62; C. L. 1897, p. 38, and authorities supra.

The Court of Private Land Claims, although a court of limited jurisdiction, was invested with the exercise of judicial powers.

U. S. v. Coe, 155 U. S. 76.

The action of the Court of Private Land Claims is res adjudicata.

Cromwell v. Sac County, 94 U. S. 351; Lumber Co. v. Buchtel, 101 U. S. 638; Stout v. Lye, 103 U. S. 66; Nesbit v. Riverside Independent Dist., 144 U. S. 610; Johnson Co. v. Wharton, 152 U. S. 252; Last Chance M. Co. v. Tyler M. Co., 157 U. S. 683; Forsyth v. Hammond, 156 U. S. 506; So. Pac. R. R. Co. v. U. S., 168 U. S. 1, 48-9.

The cases of Las Animas Land Co. v. U. S., 179 U. S. 201, and Cessner v. U. S., 169 U. S. 165, do not, when properly understood, deny the right of said court to determine any question of law or fact properly arising in the exercise of its jurisdiction.

As to the nature of the jurisdiction of that court see, U. S. v. Conway, 175 U. S. 60; U. S. v. Green, 185 U. S. 256.

As to the conclusiveness of the action of the Court of Private Land Claims and as to judgments generally, see, U. S. v. Baca, 184 U. S. 653; U. S. v. Conway, supra; Lynch v. Bernal, 9 Wall. 315; Henshaw v. Bissell, 18 Wall. 255.

The owners of the Belen Grant are estopped to question the location of this boundary line or to claim any land to the south of that line as established.

Bigelow on Estoppel, p. 562; Daniels v. Tearney, 102 U. S. 420; Ferguson v. Landram, 1 Bush. (Ky.) 548; Burlington v. Gilbert, 31 Ia. 356; Davis v. Wakelee, 156 U. S. 680; Iron Gate Bank v. Brady, 184 U. S. 665; Phila., etc., R. Co. v. Howard, 13 How. 307; Perkins v. Jones, 62 Ia. 345; Sweezey v. Stetson, 67 Ia. 481; Michels v. Olmstead, 157 U. S. 198; Firt Nat. Bk. v. Ewing, 103 Fed. 168; Fahnestock v. Gilham, 77 Ill. 637.

EDWARD A. MANN and JOHN VENABLE of Albuquerque, for appellee.

The Court of Private Land Claims had no jurisdiction of the petition of Cordoba and Peralta for the confirmation of the Cevilleta Grant,, in so far as it conflicted with or affected the Belen Grant.

Sec. 13 of act creating Court of Private Land Claims; U. S. v. Baca, 184 U. S. 659; U. S. v. Conway, 175 U. S. 71; Las Animas Land Grant Co. v. U. S., 179 U. S. 201; Town of Real de Delores Del Oro v. U. S., 175 U. S. 71; 6 Fed Stats. Ann. 58.

Neither defendants nor their predecessors of title were within the jurisdiction of the Court of Private Land Claims in the matter of the confirmation of appellants' grant, and the action of that court is not res adjudicata so far as appellees are concerned.

City of Waverly v. The Auditor of Public Accts., 100 Ill. 354; The Town of Virden v. Thomas B. Needles, 98 Ill. 366; Fleischman v. Walker, 91 Ill. 318.

Jurisdiction cannot be conferred by consent when the court is not vested by law with jurisdiction.

Fleischman v. Walker, supra; Balance v. Forsythe, 62 U. S. 389; Dunham v. Hatcher, 31 Ala. 483; State v. Tolleston Club of Chicago, 53 Fed. 18; 11 Cyc. 673; Cent. Dig., vol. 13, secs. 75 and 76.

Decree or judgment relied upon as a plea of estoppel must have been made by a court of competent jurisdiction upon the same subject matter, between the same parties for the same purpose.

Wash., etc., Co. v. Sickles, 24 How. 333; Ensimger v. Powers, 108 U. S. 292; Last Chance M. Co. v. Tyler M. Co., 157 U. S. 683; Aspern v. Nixon, 11 L. Ed. 1059; Lyon v. Perin, etc., Co., 125 U. S. 698; Haldeman v. U. S., 91 U. S. 584; Gardner v. Mich. Cent. Ry. Co., 150 U. S. 349; Okla. City v. McMaster, 196 U. S. 529; Reed v. Prop. Locks & Canal, 12 L. Ed. 1077.

## BRIEF OF APPELLANT ON REHEARING.

The act of confirmation by Congress and the judgment of the Court of Private Land Claims are of equal dignity. The location of the southern boundary by the surveyor general was open to question in the ordinary courts, unless revised, corrected or approved by some other tribunal authorized by law to re-examine his survey. His act in locating the southern boundary, it is true, is not binding on the claimants of the Belen Grant.

Stoneroad v. Stoneroad, 158 U. S. 249, 253. See also Russell v. Maxwell Land Grant Co., 158 U. S. 258, 259; U. S. v. Conway, 175 U. S. 68.

The title of the town of Belen to the lands embraced within its grant we concede is perfect, but appellant's sole contention is that the survey and patent of the Belen Grant do not follow the act of confirmation.

Title to overlapped land in the Perea and Preston Beck Grants was settled in Jones v. St. Louis Cattle Co., 232 U. S. 358.

A patent issued by the United States for land not owned by it is void.

The act of confirmation is the basis of the Belen Grant title.

Boquills Cattle Co. v. Curtis, 213 U. S. 344; Adams v. Norris, 103 U. S. 593.

Whitehill v. Victor Land & Cattle Co., 139 Pac. (N. M.) 184, recognizes some of the principles contended for by appellant in the case at bar, and is irreconcilable with the conclusions of the court in this case.

### STATEMENT OF FACTS.

The Belen claim, or land grant, was made by the crown of Spain on the 9th day of December, 1740, and was reported favorably by the United States surveyor general

of New Mexico for confirmation on the 30th day of September, 1857, and confirmed by act of Congress on the 22d day of December, 1858, and surveyed by the United States for 194,663 acres, and a patent for such amount of land was made to the town of Belen by the United States government on the 25th day of April, 1871.

It also appears that on the 29th day of May, 1819, the crown of Spain made a grant of land to the residents and inhabitants of Nuestra Senora de los Dolores de Sevilleta. The amount of land claimed under this grant is 224,770.13 acres, according to the survey made by authority of the United States. This grant was never confirmed by act of Congress, but the report of the surveyor general of New Mexico on said grant was transmitted by the Secretary of the Interior to Congress in January, 1875.

No further action in regard to said land was taken by any authority constituted by law for the adjustment of land titles in the territory (now state) of New Mexico until the filing of the petition of Felipe Peralta and Tomas Cordoba against the United States in the Court of Private Land Claims, praying that the validity of the said Sevilleta grant be inquired into, and that said grant, with the boundaries, be confirmed unto them, their co-owners and co-possessors. The Court of Private Land Claims took jurisdiction of this petition, and proceeded to adjudicate the matter in question, and ordered a survey of the said grant, which was made.

On the 25th day of July, 1896, a protest was filed by Jacinto Sanchez and Alcario Sais, described as representatives of the owners, claimants, and possessors of the Belen grant, before the surveyor general of the United States for the territory of New Mexico, objecting to the survey and plat of the Sevilleta land grant in so far as the same overlapped the Belen grant. The decree of confirmation of the Sevilleta land grant by the Court of Private Land Claims shows that that portion of the Belen grant now in dispute in this action was taken from the Belen grant, as confirmed by act of Congress, and included within the boundaries of the Sevilleta grant. The Sevilleta grant was confirmed by the United States Court of

Private Land Claims on December 4, 1893, and the survey thereof was approved by the same court on December 12, 1901, and shows a conflict with the Belen grant as to 11,-005.98 acres; the northern boundary of the Sevilleta grant extending north of the southern boundary of the Belen grant.

Upon the action of the Court of Private Land Claims and the record of this procedure in the case of Felipe Peralta and Tomas Cordoba v. United States, the plaintiff bases its action in ejectment, and files its complaint in the usual form, describing the entire grant to the plaintiff, and prays judgment against the defendant for the recovery of the lands described in their complaint. The defendant filed its answer to this complaint, denying that plaintiff was the owner or entitled to the possession of the land described in the complaint, and set up adverse possession, alleging title founded upon a patent from the United States to the town of Belen. To this answer the plaintiff replied, setting up the action of the Court of Private Land Claims as res adjudicata, and not subject to re-examination or inquiry in any court, and further alleging by way of reply to the answer that the predecessors in title to the plaintiff and the defendant practically located upon the ground the boundary line between these two grants, and that such boundary line had been acquiesced in by the predecessors in title of the plaintiff and of the defendant long before the institution of this suit, and that this defendant was estopped thereby from asserting title or questioning the boundary line designated by plaintiff, but there is nothing in the record that shows such practical location.

The appellant contends: (1) that the Court of Private Land Claims had jurisdiction of the original petition of Felipe Peralta and Tomas Cordoba for the confirmation of the Sevilleta land grant; (2) that the court also had jurisdiction to hear and adjudicate the objections filed and to order the resurvey; (3) that the Court of Private Land Claims ascertained as a fact, by a proceeding essentially judicial in its nature, the common boundary between the Sevilleta grant and the Belen

grant; (4) that the owners of the Belen grant are estop-
ped to question the location of this boundary line, or to
claim any land to the south of that line, as established by
the Court of Private Land Claims; (5) that Jacinto San-
chez and Alcario Sais represented in the Court of Private
Land Claims the defendant in this case and its predeces-
sors in title.

### OPINION OF THE COURT.

HANNA, J. (after stating the facts as above)—[1]
The first question for our consideration is with respect
to the nature and extent of the jurisdiction of the Court
of Private Land Claims.

Appellee contends that this court was one of special and
limited jurisdiction, without power to do anything except
settle controversies between claimants to a Spanish or
Mexican grant and the United States, and that its de-
cree operated only as a quitclaim, so far as the govern-
ment was concerned; the court being precluded, by the
statute creating it, from attempting to decide disputes
between rival claimants to the same lands. For which
reasons the Court of Private Land Claims had no juris-
diction of the original petition of Felipe Peralta and To-
mas Cordoba for the confirmation of the Sevilleta grant
so far as it conflicted with the Belen grant.

In support of this contention our attention is directed
to subdivisions 4 and 5 of section 13 of the congressional
act creating this court (Act March 3, 1891, c. 539, 26
Stat. 860). These subdivisions read as follows:

"Fourth.   No claim shall be allowed for any
land the right to which has hitherto been law-
fully acted upon and decided by Congress, or
under its authority.

"Fifth.   No proceeding, decree, or act under
this act shall conclude or affect the private rights
of persons as between each other, all of which
rights shall be reserved and saved to the same
effect as if this act had not been passed; but the
proceedings, decrees, and acts herein provided for
shall be conclusive of all rights as between the

United States and all persons claiming any interest or right in such lands."

The Supreme Court of the United States, in construing subdivision 4, supra, said:

"The peremptory declaration of Congress that 'no claim shall be allowed for any land the right to which has hitherto been lawfully acted upon and decided by Congress' necessarily prohibits the court from passing upon the merits of any such claim." United States v. Baca, 184 U. S. 659, 22 Sup. Ct. 543, 46 L. Ed. 733.

And, again, in the case of United States v. Conway, 175 U. S. 71, 20 Sup. Ct. 17, 44 L. Ed. 72, the same court said:

"When the title has once been confirmed by Congress it should be respected by the Court of Private Land Claims as if it were a confirmation by the court itself, and conflicting claimants are at liberty to resort to the ordinary remedies at law or in equity, according to the nature of the claim."

By the appellant it is contended that the original petition of Peralta and Cordoba was an original proceeding under section 8 of the act creating the court. This section is as follows:

"That any person or corporation claiming lands in any of the states or territories mentioned in this act under a title derived from the Spanish or Mexican government that was complete and perfect at the date when the United States acquired sovereignty therein, shall have the right (but shall not be bound) to apply to said court in the manner in this act provided for other cases for a confirmation of such title; and on such application said court shall proceed to hear, try, and determine the validity of the same and the right of the claimant thereto, its extent, location and boundaries, in the same manner and with the same powers as in other cases in this act mentioned.

"If in any such case, a title so claimed to be perfect shall be established and confirmed, such confirmation shall be for so much land only as such perfect title shall be found to cover, always excepting any part of such land that shall have been disposed of by the United States, *and always* subject to and not to affect any conflicting private interest, rights, or claims held or claimed adversely to any such claim or title, or adversely to the holder of any such claim or title. *And no confirmation of claims or title in this section mentioned shall have any effect other or further than as a release of all claim of title by the United States; and no private right of any person as between himself and other claimants or persons, in respect of any such lands, shall be in any manner affected thereby.*

"It shall be lawful for and the duty of the head of the Department of Justice, whenever in his opinion the public interest or the rights of any claimant shall require it, to cause the attorney of the United States in said court to file in said court a petition against the holder or possessor of any claim or land in any of the states or territories mentioned in this act who shall not have voluntarily come in under the provisions of this act, stating in substance that the title of such holder or possessor is open to question or stating in substance that the boundaries of any such land, the claimant or possessor to or of which has not brought the matter into court, are open to question, and praying that the title to any such land, or the boundaries thereof, if the title be admitted, be settled and adjudicated; and thereupon the court shall, on such notice to such claimant or possessor as it shall deem reasonable, proceed to hear, try, and determine the questions stated in such petition or arising in the matter, and determine the matter according to law, justice, and the provisions of this act,

*but subject to all lawful rights adverse to such
claimant or possessor, as between such claimant
and possessor and any other claimant or posses-
sor, and subject in this respect to all the provis-
ions of this section applicable thereto."* 6 Fed.
Stat. Ann. 54.

It is to be observed by an examination of the italicized
portion of section 8 that a confirmation by the Court of
Private Land Claims was to be always subject to, and not
to affect, any conflicting private interests, or claims held
adversely, but to operate only as a quitclaim or release of
all claim of title by the United States. The limitation
upon the jurisdiction of the Court of Private Land Claims,
as thus pointed out in section 8, again appears in subdi-
vision 5 of section 13, quoted supra, and there can be no
question that the court was thus limited as is contended
by appellee.

We are therefore unable to agree with this position of
appellant upon the question of jurisdiction.

It is next ably argued by appellant that the Court of
Private Land Claims had jurisdiction to hear and adjudi-
cate the objections filed by Sanchez and Sais and to order
the resurvey.

In this connection appellant contends that the case pre-
sented to the Court of Private Land Claims by the peti-
tion of Sanchez and Sais was not one of overlapping
grants, and that the petitioners did not claim that their
lands had been previously disposed of by the United
States, but was a case invoking the jurisdiction of the
court for the purpose of locating a common boundary line
between the two grants, and to confine the decree of con-
firmation to that common boundary line. We think this
is quite true, but it now develops that, as a result of the
resurvey thus brought about, something like 11,000 acres
previously included within the Belen grant, as confirmed
by Congress, was confirmed to the Sevilleta claimants. In
this connection appellee argues that appellant's conten-
tion that this was an original proceeding under section 8,
supra, does not apply, because, while confirmations of
grants having a perfect title are sanctioned by the section

referred to, nevertheless all lands previously disposed of by the United States are to be excepted from such confirmation. The act in question constituting and creating this court having withheld jurisdiction over lands previously granted by the United States, the act of the objectors could not confer upon the court a jurisdiction not conferred by the congressional act.

[2] Appellee further argues that the main object of the Court of Private Land Claims was to determine whether or not the land included in the Sevilleta grant was private or public property, and, if found to be private property, to confirm the grant. As we understand appellant's position, it is not inconsistent with the legal principles urged by appellee, but is essentially that the act of Congress did not require the defendant to invoke the jurisdiction of the court to locate the true boundary, and, having elected to invoke the jurisdiction, the appellee is bound by the result, upon the principle of res adjudicata. We cannot agree with appellant in this, as it is axiomatic that jurisdiction cannot be conferred by consent.

The rule upon the subject of res adjudicata was well stated by the Supreme Court of the United States in Washington, Alexandria & Georgetown S. P. Co. v. Sickles et al., 65 U. S. (24 How.) 333, at page 342, (16 L. Ed. 650), in the following language:

"A judgment or decree set up as a bar by plea, or relied on as evidence by way of estoppel, must have been made by a court of competent jurisdiction upon the same subject-matter, between the same parties, for the same purpose."

It is our opinion that the Court of Private Land Claims was so plainly limited in its jurisdiction in both instances of previous grant by the government and private rights of other claimants that it must be held that there was a total want of jurisdiction, which clearly could not be conferred by consent, and that the doctrine of res adjudicata could not, therefore, apply.

We do not deem it necessary to pass upon appellee's further contention that the action of the Court of Private

Land Claims in ordering a resurvey was a mere finding that the same should be made, fixing a certain line as a boundary, and not a judgment decreeing the land in question.

The third point urged in appellant's brief is that the Court of Private Land Claims ascertained as a fact, by a proceeding essentially judicial in its nature, the common boundary between the two grants. Appellant disclaims any intention of asserting that the Court of Private Land Claims had power to annul the patent to the owners of the Belen grant, but does contend that the court had the power to ascertain the fact (of boundary) upon which the law, in this subsequent proceeding, declared the result. We are of the opinion that this point is disposed of by our conclusion upon the section point, and that the Court of Private Land Claims, having no jurisdiction over the subject-matter of the controversy, could not exercise judicial power over it.

It is next submitted that the owners of the Belen grant are estopped to question the location of the northern boundary line or to claim any land to the south of the line as established. This question is ably and earnestly presented by counsel upon the theory of estoppel by conduct notwithstanding the alleged lack of jurisdiction, but we find ourselves unable to agree with the reasoning of appellant. We agree with appellee in this aspect of the case, and quote, with approval from its brief upon this point

"The mere objection to the first survey of the La Joya grant, even if it be conceded that Sanchez and Sais were authorized to, and did, act for all the claimants of the Belen grant, was not a submission of the question of title to the land here in controversy to a court of competent jurisdiction for settlement. This objection, even if the claimants to the Belen grant authorized it, was, at most, but a protest against the United States confirming the survey, and thus casting a cloud on their title. Counsel concedes that the Belen grant was under no obligation to protest, and, if they did not protest, the confirmation of

the Sevilleta de La Joya grant would not affect
their rights.   If this argument is correct, then
the Belen claimants were under no obligation to
protest against the last survey, and, not having
done so, are in no way bound by the decree.   As
we have seen, the decree, by the very terms of
the statute, could have no effect 'other or further
than as a release of all claims of title by the Uni-
ted States; and no private right of any person
as between himself and other claimants or per-
sons, in respect to such lands, shall be in any
manner affected thereby.'   Section 8, Act March
3, 1891; 6 Fed. St. Ann. 54."

Appellant, as a final proposition, urges that Sanchez
and Sais represented in the Court of Private Land Claims
the defendant in this case, appellee here, and its prede-
cessors in title.   We do not understand that this conten-
tion of appellant was controverted by appellee, and deem
it immaterial by reason of our conclusion upon the ques-
tion of jurisdiction and our opinion that jurisdiction
could not be conferred by consent.

We do therefore conclude that the judgment of the
trial court must be affirmed; and it is so ordered.
ROBERTS, C. J., and PARKER, J., concur.

### ON REHEARING.

HANNA, J.—After a careful consideration of the brief
and argument of appellant on rehearing, we conclude that
the court has not misapprehended the contention of ap-
pellant, and we therefore adhere to our former opinion.
ROBERTS, C. J., and PARKER, J., concur.

### SYLLABUS BY THE COURT.

