30 P.(2d) 719

JACKSON v. GALLEGOS et al.

No. 3760.

Supreme Court of New Mexico.

March 2, 1934.

Barker & Fahy and J. O. Seth, all of Santa Fe, for appellants.

Gilbert & Hamilton, of Santa Fe, for appellee.

SADLER, Justice.

This case is before us on motion for rehearing. We deem it convenient to withdraw the opinion heretofore handed down and to substitute the one to follow therefor.

Plaintiff (appellee before us) sued in the district court of Rio Arriba county to quiet title to a portion of the Juan Jose Lobato land grant located in said county, naming innumerable defendants including the own-

ers of the Polvadera land grant who are sole appellants here and will be referred to herein as defendants.

The complaint, which was one in ordinary form to quiet title, set forth numerous exceptions, embracing all those contained in the decree of confirmation and patent as well as additional exceptions. These defendants appeared and filed their answer and cross-complaint. The plaintiff filed his answer to defendants' cross-complaint and the cause thus proceeded to trial.

At the trial plaintiff's counsel read into the record a stipulation of the parties made at or prior to the date of trial.

Largely it contained reciprocal agreements on the part of each as to date of the other's grant, of juridical possession thereunder, time of confirmation by the United States Court of Private Land Claims and of issuance of United States patent pursuant thereto; also stipulations with reference to present ownership by the parties of the grant titles and an admission on the part of each that the other's grant lines as originally made embraced the overlap, the lands at issue between them. It was also stipulated that each was an individual grant of a specific tract, neither being a community grant nor what is known as a "float," having reference to undescribed and unlocated lands. Portions of the stipulation will be adverted to more in detail hereinafter as occasion demands.

Having introduced the stipulation into the record, the plaintiff rested. Thereupon the defendants interposed a motion to dismiss which was in effect a demurrer to the evidence, as follows:

"Mr. Fahy: The plaintiff having rested on the stipulated facts, the defendants move for judgment of dismissal as against the defendants Emmet Wirt, Katherine Long Garcia and J. Cristobal Gomez, Administrator of the estate of Felix Garcia; the defendants move for judgment of dismissal against them and also judgment on their cross-complaint against the plaintiff for the reason that the stipulation shows that these defendants are the owners of the paramount prima facie title."

The court denied both motions, whereupon the defendants proceeded and without objection from plaintiff to introduce evidence consisting of an abstract of title containing among other things proceedings in a suit in partition and to quiet title to the Polvadera grant out of which arose a special master's deed relied upon by defendants. Likewise and without objection from plaintiff that the issue was immaterial, the defendants introduced the oral testimony of several witnesses in support of their claim of title by adverse possession. Defendants having rested their case, the plaintiff questioned the sufficiency of the evidence to establish title by adverse possession by a demurrer to the evidence upon the following grounds, to wit:

"Mr. Gilbert: Plaintiff demurs to the evidence on the ground it does not show continuous adverse possession and exclusive adverse possession or visible adverse possession during any of this period of time."

Contemporaneously with the interposition of the demurrer, the defendants renewed their motion for dismissal of the complaint and judgment on their cross-complaint urged at the close of the plaintiff's case in chief. The plaintiff's demurrer to the evidence was sustained and the motion of defendants was denied. Thereafter a final decree embracing certain findings and conclusions was entered in favor of plaintiff. The present appeal seeks a revision and correction of that decree.

We are confronted at the threshold of this case with defendants' claim of error predicated upon the court's action in overruling their motion to dismiss and for judgment upon their cross-complaint interposed when plaintiff rested his case in chief and renewed at the close of defendants' case. If defendants' position upon this question be correct, the other points need not be considered. It is urged with great earnestness that by reason of plaintiff's omission to prove that the overlap, the land to which plaintiff sought to quiet title as against defendants, constituting as it does only a part of the Lobato grant, was not within any of the exceptions withheld from said grant by the patent, or subsequently existing as enumerated in the complaint, there was a fatal failure of proof entitling defendants to a dismissal of plaintiff's complaint and judgment on their cross-complaint. The rule invoked is that applied in Maxwell Land Grant Co. v. Dawson, 7 N. M. 133, 34 P. 191; Id., 151 U. S. 586, 14 S. Ct. 458, 38 L. Ed. 279, the reason for which is well stated in Stephens v. Terry, 178 Ky. 129, 198 S. W. 768.

If upon the merits of the point, we should agree with defendants in their view of the proof, still whether *as a fact* the 9,500-acre overlap is within or without the exceptions from plaintiff's grant, nowhere appears except as its location within the exceptions may be surmised from plaintiff's failure to prove that it lies outside them.

The plaintiff, although arguing at length that under the stipulation and pleadings there was no such failure of proof, questions defendants' right to review the point since the claimed defect in proof was not pointed out specifically in the motion to dismiss. See Blacklock v. Fox, 25 N. M. 391, 183 P. 402. Counsel for defendants insist that their motion, in effect a demurrer to the evidence, challenged the sufficiency of plaintiff's evidence as a whole and renders available the point urged. And it may be inquired, as to the particular defect here claimed, whether within the rule applied in Schaefer v. Whitson, 32 N. M. 481, 259 P. 618, the same might be noticed as a matter of fundamental error.

But in view of our conclusion that a new trial should follow our reversal of the trial court's ruling on the issue of adverse possession hereinafter discussed, we are of opinion that upon such retrial and in furtherance of justice the case should be open for additional proof upon this issue. We are therefore disposed to forego a decision of the question embraced in this otherwise serious point. We apprehend that upon such retrial this issue will be resolved by affirmative proof rather than a mere failure thereof. Thus no injustice can prevail as conceivably might

were the question made decisive on the present state of the proof.

■ One of the initial points presented for decision before passing to other questions is involved in the determination whether, aside from its subsequent loss (if the subsequent loss of either title can be considered under the stipulation), the Juan Jose Lobato grant or the Polvadera grant has the superior title to the area within an overlap of the boundaries of the two grants, which conflict is conceded by both parties to exist.

The facts raising this issue are these: The Juan Jose Lobato grant has priority of grant and of delivery of juridical possession from the kingdom of Spain. The Polvadera grant has priority of confirmation by the United States Court of Private Land Claims and of patent from the United States pursuant thereto. The stipulation embraces a reciprocal agreement on the part of each that the other's grant covered all lands within the conflict and was a valid and perfect grant, except in so far as its validity may, as a matter of law, have been affected, as to the Lobato, by the subsequent grant of the Polvadera and its earlier confirmation and patent; and, as to the Polvadera, by the priority of grant possessed by the Lobato.

The plaintiff relies upon Territory v. Delinquent Tax List, 12 N. M. 62, 73 P. 621; Territory v. Delinquent Tax List, 12 N. M. 169, 76 P. 316; Board of Trustees of Cebilleta de la Joya Grant v. Board of Trustees of Belen Land Grant, 20 N. M. 145, 146 P. 959; Id., 242 U. S. 595, 37 S. Ct. 215, 61 L. Ed. 514; Board of Trustees v. Brown, 33 N. M. 398,

269 P. 51; U. S. v. Percheman, 7 Pet. 51, 8 L. Ed. 604; Trenier v. Stewart, 101 U. S. 797, 25 L. Ed. 1021; Ainsa v. N. M. & Ariz. R. R. Co., 175 U. S. 76, 20 S. Ct. 28, 44 L. Ed. 78; Henshaw v. Bissell, 18 Wall. 255, 21 L. Ed. 835; and Interstate Land Co. v. Maxwell Land Grant Co., 139 U. S. 569, 11 S. Ct. 656, 35 L. Ed. 278, in support of his claim to superiority of title under these facts. The authorities relied upon abundantly sustain his position. We therefore hold the Lobato grant and the owner thereof to have the superior title to the area in conflict in so far as determined by the facts mentioned in connection with our discussion of this question.

■ The plaintiff insists that when we have decided the question just determined, we have passed upon the sole question submitted for our determination by the stipulation, saying:

"Its determination will dispose of all of the issues herein, when considered in connection with the stipulated fact that both the parties hereto were, at the time of the filing suit and at the time of trial, the owners of all of the rights, titles and interests in their respective grants which were originally vested in the grantees and confirmees thereof."

Although the weight of this argument is directed against defendants' right under the stipulation to rely upon the decree in the quieting title suit as res adjudicata and to claim under a certain tax title purchased by defendants' predecessors in interest which was disclosed and adjudged valid in the partition proceedings, the construction urged, if

sustained, as effectually eliminates defendants' claim of adverse possession as it does the other two assertions of title. In urging that a determination of the superiority of grant' titles when considered in connection with the stipulation disposes of all the issues, the plaintiff's argument necessarily embraces the issue of adverse possession. Indeed, it would be fatal to the construction contended for by plaintiff to concede that adverse possession was properly triable under the stipulation while res adjudicata and the tax title were not.

In urging his construction of the stipulation, the plaintiff invokes the language of paragraph 7 thereof reading as follows:

"That the plaintiff herein has, and at the date of the commencement of this suit had acquired, and is and then was the owner of all of the right, title and interest acquired by said Juan Jose Lovato in and to said Juan Jose Lovato Grant, and had acquired and is the owner of all of the right, title and interest therein and thereto of the persons to whom said grant was confirmed and patented as aforesaid."

Plaintiff then inquires:

"How can appellants be permitted to stipulate in one breath that appellee was the owner of all of the right, title and interest of the original grantees and confirmees, and in the next be heard to claim that such interest had been divested by court decree against 'unknown claimants' in the interim?"

The position of defendants is that the stipulation was never intended to and did not preclude any proof, if it could be adduced, "that the grant titles (the facts in regard to which alone the stipulation relates) had been lost—either by adverse possession, decree of court, tax sale, or in any other manner."

The defendants then, in support of their construction of the stipulation as just expressed, assert that the plaintiff's present interpretation is invoked for the first time in this court and was not urged or relied upon in the court below. The record seems to support them in this statement. They contend that the course of proceedings at the trial was based upon their construction of the stipulation. From the record it appears the defendants introduced in evidence, without objection from plaintiff, a voluminous abstract of title. It contained, among other things, a transcript of the proceedings in a suit in partition and to quiet title out of which there arose a special master's deed of the Polvadera grant to defendants. They rely upon the decree in that suit as res adjudicata upon the plaintiff and also rely upon the tax title of their predecessors adjudged valid in the quieting title and partition suit.

Also, without objection from plaintiff that the thing sought to be proved by them was immaterial under the stipulation, the defendants produced and examined, and had subjected to cross-examination by plaintiff, numerous witnesses, in support of their claim of title by adverse possession. Plaintiff demurred to this evidence upon the ground that it failed in three named and essential respects to show title by limitations. The court sustained the demurrer and found and adjudicated that defendants had not "acquired title to any of the properties at issue

between the plaintiff and said cross-complainants *by adverse possession, or otherwise."* (Italics ours.)

If the construction now urged upon us by plaintiff be the correct one, and we are willing to agree the stipulation is fairly susceptible of such a construction, the time of both court and counsel was thus wasted in hearing a false issue. It must have been the view of the court and all parties below that the claim of title by adverse possession was open to defendants under the pleadings and stipulation. Otherwise objection would have been raised to litigating the issue. Either that, or plaintiff by his conduct at the trial in consenting to litigate this issue, thereby waived so much of the stipulation as might otherwise have denied the right. Under either view, we hold the question of defendants' title by adverse possession is not eliminated by the stipulation. A like conclusion follows as to the issues of res adjudicata and the tax title in so far as it is claimed they are eliminated by the stipulation.

The defendants predicate errors upon the trial court's failure to hold the decree in the suit to partition and quiet title, disclosed in the abstract, res adjudicata of the questions sought to be litigated by plaintiff in the present suit; likewise, upon the trial court's failure to hold defendants to be owners of the land involved under a tax sale to their predecessors in interest, established and adjudged valid in said partition suit. Whatever was before the court in the instant case on the question of the tax sale appeared in the abstract as a part of the proceedings in the partition suit, and not through independent proof. Hence, so far as the present record stands, it must be apparent that unless plaintiff were a party to the quieting title and partition suit, he is not bound by the decree therein either upon the theory of res adjudicata, or by virtue of the tax title.

Waiving for the moment questions raised against the competency as proof of any and everything appearing in the abstract, some of which presently will be determined, we are confronted with three objections by plaintiff to the availability to defendants of res adjudicata either defensively or as a basis for affirmative relief. They are (1) that it was not pleaded; (2) that it was not proven; and (3) that it was not ruled upon by the trial court.

As to the first objection, we think the absence of a pleading to support the proof offered was waived and a consent to litigate resulted when plaintiff without objection stood by and saw the abstract containing at length the proceedings and decree in the quieting title suit admitted generally. See 49 C. J. 828; Canavan v. Canavan, 17 N. M. 503, 131 P. 493, Ann. Cas. 1915B, 1064; Nikolich v. Slovenska, etc., 33 N. M. 64, 260 P. 849.

Although counsel for defendants have pressed cogently the contention that by their proposed finding of title in defendants and through exceptions to the trial court's finding of title in plaintiff, they brought directly and specifically to its attention their reliance upon their record title as disclosed by the abstract, thus, as asserted, meeting the third objection, supra, we think our observations

on the second objection, viz., that res adjudicata was not proven, will dispense with a decision of the third or last one.

There is nothing in the record to show that plaintiff held under any of the named defendants in the partition and quieting title suit. Nor, so far as the record discloses, was any effort made to show the existence of facts warranting a designation of him, or his predecessors in interest, as defendants to said suit under the style of "unknown claimants of interest" in the Polvadera grant. Absent such showing, it is earnestly insisted by plaintiff that the decree in the quieting title suit is wholly inoperative and ineffective as to him. He cites 34 C. J., pages 1067 and 1078, to the point that the burden was upon defendants invoking the decree to place plaintiff in privity with it.

While these objections to the decree's effect upon plaintiff are serious, striking down as they do, if sustained, defendants' claim of res adjudicata, as well as the assertion of title under the tax sale, the position of defendants with respect thereto is not unlike that of plaintiff with reference to the first point discussed, viz., the claimed defect in plaintiff's proof through failure to show that the overlap was not within any of the exceptions carved from the Lobato grant. Here, as there, we are asked to foreclose the claims through a failure on the part of those invoking them to sustain a burden of proof assertedly resting upon them. The same considerations which moved us to pass a decision of the point mentioned and leave the question open at the new trial for further proof, if it exists, direct a like course here and it is so ruled.

The defendants, among other things, rely upon title secured through their purchase of the Polvadera grant at a special master's sale held July 12, 1918 (and subsequently confirmed), under the decree in the suit to partition and quiet title to said grant, and a special master's deed, dated July 29, 1918, issued pursuant thereto. These facts also are proven, if at all, by the abstract. It is insisted that the sole warrant for the admissibility of said abstract is to be found in 1929 Comp. § 45-615, making an abstract of title to real estate in New Mexico, "certified to as correct," etc., receivable in evidence in all courts of the state "as evidence of the things recited therein, in the same manner, and to a like extent, that the public records are now admitted," etc.

The sufficiency of the certificate to entitle this abstract to reception in evidence under the statute is assailed in two respects, first, as excepting from operation thereof "conflicts, if any there be, with other Land Grants," and, second, as certifying to the correctness of the instruments abstracted as the same appear from the indices of the records of Santa Fe county, instead of Rio Arriba county, where the lands in controversy lie.

We do not consider substantial either of the objections here urged for the first time against the admissibility or evidentiary value of the abstract. Plaintiff permitted it to go in evidence without objection. The reference to Santa Fe county records in the certificate

is obviously a clerical error, resulting in the failure of a Santa Fe county abstractor preparing the abstract to change the name of the county to Rio Arriba in the form of certificate in common use by it. Every instrument abstracted refers to the records of Rio Arriba county as its source and without doubt the certificate was understood and considered by court and counsel as relating to the records of Rio Arriba county, as unquestionably it does.

It is equally obvious that the exception in the certificate of conflicts, if any, with other land grants, when related to the land described in the caption and to what appears in the body of the abstract, does not except any land from operation of the certificate, but simply excludes therefrom the chain of title to any grant which conflicts with the one under search. That such is the effect of the exception is abundantly shown by the fact that the caption describes the land to be abstracted, as the Polvadera grant, as confirmed, surveyed, and patented, containing 35,761.14 acres. This is the total original acreage of the Polvadera embraced within its exterior boundaries, including conflict with the Lobato, and such is the acreage, without deduction, carried through the abstract as shown by instruments, court proceedings, and tax receipts. Hence, we conclude that the matters shown in the abstract are entitled to such evidentiary value, and such only, as is accorded them by the statute permitting the reception in evidence of a duly certified abstract.

We now come to the question of adverse possession. When defendants rested in their proof on this issue, the plaintiff interposed his demurrer to the evidence hereinabove set out. The demurrer was sustained by the court and its action in so doing is one of the points relied upon by defendants for reversal.

As we view the matter from the record before us, in order to prevail upon their claim of adverse possession, the defendants must establish title under 1929 Comp., § 83-119, as contradistinguished from title under section 83-122.

The former recognizes title by adverse possession where any one shall have had possession for ten years of lands granted by the governments of Spain, Mexico, or the United States, holding or claiming the same by virtue of a deed or deeds purporting to convey an estate in fee simple. Payment of taxes for the period covered is not required under this statute. Under section 83-122, payment of taxes is required. While the abstract here in evidence shows payment of all taxes by defendants or their predecessors in interest on the Polvadera grant, including the overlap, for the years 1904 to 1926, both inclusive (the abstract having been certified shortly after further taxes became due), this would fall short by two years of showing tax payments for ten years after defendants began to hold under their special master's deed, admittedly good as furnishing color of title under section 83-122. Hence, although defendants pleaded title under both statutes, the failure to show tax payments for the full period of time required eliminates a consideration under the record before us of title under the last-mentioned statute.

In proof of possession in their predecessors in interest prior to purchase by defendants at special master's sale, the defendants mainly rely upon the possession of a custodian of the Polvadera grant appointed by the court in the above-mentioned suit to partition and quiet title with authority to take possession, collect rentals, prevent depredations, and otherwise conserve the property. The facts tending to show such possession consist chiefly in a transcript of the proceedings in said suit such as the custodian's various reports of tenancies, collections, and disbursements. The plaintiff insists that the abstract of these reports is entitled to no more weight than would be the original court papers themselves, and that the latter would be mere hearsay as to him.

In addition to the objection to the hearsay character of what the abstract disclosed on the custodian's possession, the plaintiff also objects to it upon the ground that possession of the custodian cannot be demed to have been adverse to the true owner. It is to be borne in mind that all of these objections are urged here for the first time, the entire abstract going in evidence at the trial without objection of any kind.

Passing the question whether the custodian's possession was adverse to plaintiff, we do not deem it sufficient to establish a prima facie showing of adverse title in defendants' predecessors in interest. The order appointing the custodian discloses that he was authorized to prevent depredations and rent the pasturage on the grant.

Over a period of twelve years from April, 1906, the date of his appointment, to August, 1918, following partition sale of the grant in July preceding, he filed only four reports; one in 1908, one in 1913, one in 1917, and the last in 1918. The first three reports as abstracted contained this information and nothing more: "Said report covers receipts and expenses in the case of said Polvadera Grant." The last one alone contains a recitation of any of the contents of the report. It recites a lease from June 1, 1918, to November 1, 1918. Except for that report there is nothing in any of them to disclose the extent or character of the custodian's possession, and particularly that it extended over the conflict.

Passing then to the question of defendants' showing of adverse possession dating from the time they began to hold under special master's deed evidencing their purchase at partition sale of the whole of the Polvadera grant, including the conflict, the pertinent facts which their evidence tends to establish are as follows: That one of the defendants and the predecessor in interest of the other two, purchased the entire Polvadera grant of 35,761.14 acres, including the overlap of 9,510.9 acres, at a partition sale of said grant in July, 1918, for a cash consideration of $53,-641.71, or $1.50 per acre, which was duly paid. The special master's deed was dated July 29, 1918, and, after approval on August 2, 1918, was recorded in Book 21—A of deeds in Rio Arriba county on September 6, 1918.

In addition, under the stipulation they were conceded to be the owners of the original

grant title to the Polvadera except as plaintiff might show it to have been lost by subsequent events. The plaintiff's present suit to quiet title was instituted in the district court of said county on January 16, 1930, and trial thereof was had on April 27th, of the same year.

The area in conflict, the overlap, lay on the eastern side of the Polvadera. There is a conflict between the Lobato grant and the town of Abiquiu grant, the Abiquiu conflict being one of the exceptions from the Lobato grant as confirmed and patented. The western boundary of the Abiquiu conflict forms the eastern boundary of the greater portion of the area within the overlap between the Polvadera and the Lobato grants. The Cerro Pelado or Pelado Mountain lies almost in the center of this overlap considered from the points of the compass in all directions. A little less than one-half the length of the overlap viewed longitudinally consists of a narrow rectangular shaped strip near the southern end of which lies the Vallecitos Peak referred to in the testimony of some of the witnesses.

It was a matter of general repute and common opinion around the town of Abiquiu in the neighborhood of which the two grants lay that the area in conflict was an integral part of and belonged to the owners of the Polvadera grant. In fact none of the witnesses had ever heard of any dispute over ownership of the overlap except as knowledge thereof arose from institution of the present suit. It was the general understanding of the witnesses that the eastern boundary of the Polvadera

"common pointed," as some expressed it, or coincided, with the western boundary of the Abiquiu grant along the northerly half of the overlap, and that the Polvadera's eastern boundary lay easterly of, and embraced within the Polvadera, the Cerro Pelado; and was east of Vallecitos Peak along the southerly half thereof, such southerly half consisting of the narrow rectangular strip above referred to.

One Simon Martinez, a witness for defendants, had grazed his cattle on the Polvadera, including the overlap, annually, for a period of nine years preceding the trial, under permits from defendants. During all of this time, as indicated, he was holding under the defendants. For so much of the time as transpired prior to 1926, he was in under a verbal permit from Felix Garcia, a copurchaser with defendant Wirt at the partition sale, granted to residents of Abiquiu owning live stock to graze their horses and cattle without exaction of rental. From 1926 to the time of trial, he secured his grazing permits from J. M. C. Chavez, Jr., agent of the owners in charge of the Polvadera grant and paid rent to him.

Other particular tenants or permittees of defendants, and the years for which they occupied the grant, including the conflict, for the grazing of cattle, sheep, and horses, during the only seasons of the year in which it was capable of use, to wit, for spring and summer grazing, were J. M. C. Chavez, Jr., and Sostinos Suazo for 1921; Frank Bond, for lambing and grazing of sheep in 1922, 1923, and 1924; Alfredo Maestas for grazing

of horses in 1925 and 1926; Pedro and Sostinos Suazo for grazing of sheep in 1928, 1929, and 1930. The use in the year 1930, of course, cannot avail defendants, since suit was instituted on January 16th of that year.

In addition, one Pedro Suazo, under a permit claimed to have been issued to certain residents of Abiquiu for the grazing of their horses and cattle on the Polvadera without rental exactions, occupied the grant including the overlap annually from 1907 to the time of trial, for the grazing of his cattle, prior to 1926, without rental under the permit from the owners testified to, and from 1926 to the time of trial under rental arrangements made with, and rentals paid to, J. M. C. Chavez, Jr., as agent of the Polvadera grant.

Others found on the interlock with their live stock during the period prior to 1926, although the exact years are not fixed, claimed to the witness J. M. C. Chavez, Jr., to be there under leases from the owners of the Polvadera.

From 1926 forward the witness, J. M. C. Chavez, Jr., acted as agent for the owners of the Polvadera, collecting rentals, preventing trespassing, and looking after the property generally. He "patrolled" the property about three times yearly. In addition, he and the owners permitted a squatter to remain on the grant in exchange for the small service of fixing up pastures and reporting trespassing. Chavez thought it unlikely that any one could get on the Polvadera with live stock and remain any appreciable time without discovery and having to account. He himself had grazed his stock on the overlap intermittently over many years, but always under arrangements with owners of the Polvadera, not the Lobato.

Indeed, those so using the overlap, as aforesaid, under permits or leases from defendants from the evidence appear to have been in exclusive occupancy thereof. They had never been interfered with or disturbed in their possession by the owners of the Lobato grant, nor so far as the record discloses was any assertion of adverse or hostile claim or title to the overlap by the Lobato owners ever made during any of the period covered by the testimony of the witnesses, prior to the institution of the present suit. At some time prior to becoming agent for the Polvadera, the witness, Chavez, had acted as agent for the Lobato for a period of two years. During such period, he never took possession of the overlap nor presumed to grant leases thereon.

The defendants and their predecessors in title show payment of taxes on the overlap, as well as the rest of the Polvadera grant, for a period of twenty-two years, from 1904 to 1926, both inclusive. The abstract was certified shortly after taxes for first half of 1927 became payable and tax payments are not shown beyond 1926.

Continuous and uninterrupted possession unmixed with that of the custodian and freed of the question raised as to the adverse character of the latter's possession thus appears to have been shown in defendants for a period of at least ten years immediately prior to the institution of suit, to wit, from 1920 to 1929, both years inclusive. Two questions, aside from the truth of the evidence which is con-

ceded upon demurrer, confront us as to its legal sufficiency.

The first results from the fact that for at least two years of the period prior to 1926 the land in controversy was occupied by permittees of defendants without rental, to wit, 1920 and 1925. Rental was exacted from all occupants including these from 1926 forward. Pedro Suazo, a witness for defendants, was one of a group of Abiquiu residents owning live stock who through a personal emissary sent in such behalf secured permission from Felix Garcia, a cotenant of the property, to occupy the premises for the grazing of their cattle and horses without rental payments. It was under the permission reported by such emissary as having been granted that this witness for some years prior and down to 1925 and others for the years intervening between 1920 and 1925 occupied and grazed the disputed area with their cattle and horses without rental exaction. The permission did not extend to the grazing of sheep and the evidence discloses that for several of the years prior to 1926 the Polvadera owners were receiving returns for the grazing of sheep on the property.

The possession of the defendants through these permittees being otherwise sufficient we are unable to declare as a matter of law that the mere circumstance that they paid no rental destroys the efficacy of such possession. It is not as though the owners had thrown the land into a commons and later sought to take advantage of the possession of whomsoever by chance may have used it. The very fact that the permit was confined to grazing of cattle and horses and that during the greater portion of the permittees' occupancy without rental the owners were receiving rental from others for grazing of sheep precludes such a view.

Here those seeking the permission, certain live stock owners residing at Abiquiu, a small community near the property, delegated an emissary to secure it for them. There is nothing to indicate that the identity of these permittees on whose behalf the emissary spoke was not made known to the owners approached in their behalf. Everything suggests the contrary.

Upon principle we see no reason for denying to an adverse claimant the benefit of possession through a permittee or licensee unless some other reason than the mere fact that it is without rental be advanced to destroy its effectiveness. For the comparatively short period when the efficacy of defendants' possession depends solely upon the occupancy of such permittees, other considerations than a money rental may have been sufficient unto them to warrant their remission of a money rental. The evidence tends to show that for such period defendants' possession through the permittees was exclusive and continuous. The only other ground of attack raised by the demurrer is that it was not visible. It is here argued that it lacked visibility. But the payment of rental would not have rendered it more visible. Nor does it seem the slightest inquiry by the Lobato owners of the occupants would have failed to disclose by what right they claimed to occupy, the claimed right being concededly adverse.

█ That possession by permission or license from an owner is in law deemed possession by the latter seems well settled. The licensee or permittee cannot claim adversely to such owner, the reason being that possession of the occupant under such circumstances is deemed possession of him upon whose pleasure it depends. 2 C. J. 131; Bergere v. Chaves, 14 N. M. 352, 366, 93 P. 762, 51 L. R. A. (N. S.) 50. We have recognized that less notoriety, and even less frequency of acts of ownership are required with possession under color of title than without it. Baker v. Armijo, 17 N. M. 383, 128 P. 73.

█ The other of the two questions mentioned above as going to the legal sufficiency of possession through the permittees relates to the claimed hearsay character of the reputed granting of such authority as reported back to them by the emissary sent to secure it from the owners. We think, however, that quite apart from such emissary's report as evidence of its own truth, and we do not consider it for such purpose, the evidence supports an inference that such authority had in fact been given. Upon the faith of it the permittees over a number of years continued to occupy and graze the premises without molestation from the Polvadera owners believing and asserting themselves to be there by authority of such owners. As early as April, 1922, the co-owner by whom such permit was claimed to have been granted made statements to a witness and permittee corroborative of the fact that a permit of the kind claimed had theretofore been granted. We do not feel that upon demurrer, where the evidence is to be viewed in the strongest aspect it will reasonably bear favorably to the party demurred against, it exceeds the bounds of legitimate inference to assume that the permission claimed was genuine and had in fact been given.

We consider that as the evidence stood on the issue of adverse possession when the defendants rested, they had made a prima facie case under 1929 Comp., § 83-119. The case was before the court upon a demurrer to the evidence. By demurring to the evidence the plaintiff admitted the truth of all of the defendants' evidence and of all legitimate inferences deducible therefrom.

In Sanchez v. Torres, 35 N. M. 383, 298 P. 408, 409, dealing with the effect of a demurrer to the evidence, we said: "Appellees consider this a question of fact to be reviewed under the substantial evidence rule. They argue that the trial judge may not and should not have believed some of the testimony. Their position is unsound. They demurred to the evidence. Under the rule well established in this state, even though this was a nonjury case, they admit the truth of all the testimony and of all legitimate inferences therefrom. Union Bank v. Mandeville, 25 N. M. 387, 183 P. 394; Bezemek v. Balduini, 28 N. M. 124, 207 P. 330; Horchheimer v. Prewitt, 33 N. M. 411, 268 P. 1026; Martin v. Village of Hot Springs, 34 N. M. 411, 282 P. 273. So, the question before us is whether, giving full credit to the witnesses, full weight to the evidence, and making proper inferences therefrom, a judgment for the plaintiffs could have been sustained."

The land in dispute was rough, broken grazing land. The evidence tended to show that it was devoted by defendants to the only use to which it was adapted, the grazing of live stock, during the only seasons of the year when it was capable of such use, the spring and summer. See Johnston v. City of Albuquerque, 12 N. M. 20, 72 P. 9; Baker v. Armijo, supra; G O S Cattle Co. v. Bragaw's Heirs, 38 N. M. 105, 28 P.(2d) 529, and 1 R. C. L. 694. The good faith of their claim is attested by the fact that they paid for the area of the conflict a sum in excess of $14,000. The evidence further tends to show them, from the time of their purchase to time of trial, in possession through tenants and permittees, exercising every incident of dominion, control, and ownership, without interference or disturbance by plaintiff, until the filing of the present suit, which was more than ten years after the defendants' purchase and entry into possession.

We are not unmindful of the rule upon the quantum of evidence as stated in Montoya v. Catron, 22 N. M. 570, 166 P. 909. We do not understand that what we there said in applying the substantial evidence rule to support findings made is to deny trial courts the aid of the law of inferences in trying titles based upon adverse possession. If so, the rule for our guide in testing the correctness of a trial court's ruling upon demurrer to the evidence, as laid down in Sanchez v. Torres, supra, will have to be modified in its application to cases of adverse possession by eliminating therefrom the condition that there is to be taken as true, not only all the

testimony demurred to, but also "all legitimate inferences therefrom."

It follows from what has been said that the judgment of the trial court must be reversed. The cause will be remanded to the district court with directions to set aside the judgment heretofore rendered and award a new trial.

It is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.