199 P.2d 987

**FIRST NAT. BANK IN ALBUQUERQUE v. ROWE.**

No. 5125.

Supreme Court of New Mexico.

Nov. 24, 1948.

Miller & Chavez and Hannett & Hannett, all of Albuquerque, for appellant.

Rodey, Dickason & Sloan, Frank M. Mims, and Jackson G. Akin, all of Albuquerque, for appellee.

SADLER, Justice.

The question for decision is whether the trial court erred in holding the appellant, defendant below, to the trial of a single issue which the parties had stipulated in advance should be the sole one for determination, after granting defendant leave to amend in a respect that injected a new and independent issue.

The suit was one to foreclose two certain real estate mortgages executed by the defendant, allegedly as collateral security for money already loaned, and as collateral security as well for money to be loaned by plaintiff bank to L. & B. Packing Company, a co-partnership composed of George Lescallett and Neil Bungard. The co-partnership was engaged in large scale carrot farming near Los Lunas, New Mexico, during the years 1945 and 1946. During the same period, Lescallett was manager of the Albuquerque office of the Reconstruction Finance Corporation where the defendant served as his secretary from December, 1939, to August, 1946.

In 1945 the partnership borrowed money from the plaintiff bank to finance its operations for that year. They proved unsuccessful and by January, 1946, the partnership had become indebted to the bank to the extent of $12,000 evidenced by the partnership note in that sum. It was secured by chattel mortgages of the partnership equipment and an assignment of a lease held by the partnership from the Atchison, Topeka and Santa Fe Railway Company, including the vegetable packing shed. This security comprised practically all the assets of the partnership.

In February, 1946, the partnership sought further loans from the plaintiff to finance the current crop year. On February 21, 1946, and for value received, the partnership executed a note to plaintiff for $12,000 maturing January 2, 1947, and a few days later on February 27, 1946, the partnership note to plaintiff in the sum of $5,000 with the same maturity was executed. In order to secure an aggregate indebtedness of the defendant, L. & B. Packing Company, up to a total of $24,000, the defendant Regina Rowe, on February 27, 1946, executed and delivered to plaintiff the two real estate mortgages whose foreclosure was asked in this suit. Each mortgage contained a clause making it security

for "any indebtedness at any time owing by debtor to mortgagee."

The $12,000 note dated February 21, 1946, was a renewal of indebtedness then owing the plaintiff bank representing partnership losses for the 1945 crop year. The $5,000 note executed on February 27, 1946, represented the initial advance of the new loans from the bank to finance the 1946 cropping year to approximate the agreed sum of $12,000, to make a total indebtedness of the partnership to the bank, if advances to the full extent agreed were made, in the sum of $24,000. The two real estate mortgages mentioned were made and delivered to secure said total indebtedness as claimed by the plaintiff bank. According to the defendant's contention the mortgages mentioned were not to secure the $12,000 note dated February 21, 1946, a copy of which was attached to the plaintiff's complaint as Exhibit "A." Each mortgage had a copy of the $5,000 note attached. No copy of the $12,000 note was attached to either. After the pleadings were made up, a pre-trial stipulation was entered into by the parties agreeing to all the facts save one. The one remaining fact left open for trial by the stipulation is contained in paragraph 6 thereof, reading as follows:

"6. The only issue to be determined in this case is whether the promissory note shown as Exhibit 'A' to the complaint is secured by the two real estate mortgages shown as Exhibits 'C' and 'G' thereof."

When the plaintiff had introduced testimony on the single issue reserved for trial, counsel for defendant Rowe asked leave to amend her answer by adding the following allegations, to-wit:

"That at the time the defendant, Regina Rowe and just before she signed the mortgages represented by Plaintiff's Exhibits 'C' and 'G' she made inquiry of plaintiff's agent as to the risk involved in her behalf and plaintiff's agent undertook to make a disclosure to the effect that the debtor was indebted to plaintiff in the amount of $12,000.00, but failed to further disclose that the debtor had no free assets; That all the assets of the debtor were mortgaged to the creditor; That the $12,000.00 note, in fact, represented a renewal note of past and over-due debts. Wherefore, defendant, Regina Rowe prays that plaintiff's foreclosure suit be dismissed."

In proposing the amendment counsel stated that upon inquiry of plaintiff's agent as to the risk involved at time of signing the mortgages the latter, although undertaking to do so, had failed to make full disclosure by informing defendant that the partnership had no "free" assets. The trial judge denied the application to amend, pointing out that such not only was an issue outside the stipulation, but also something which very well might have been as-

certained by deposition or otherwise prior to trial.

Again, and at the conclusion of the trial, counsel for defendant renewed his application to amend the answer and leave so to do was granted by virtue of the following proceedings, to-wit:

"Mr. Chavez: I would like to ask permission of the Court at this time to again offer the amendment to my answer, but before I do so, I would like to settle the law. It isn't only on the basis of the testimony that there is fraud and I want to re-offer my amendment to our answer to conform to the evidence under Rule 15b. I believe under the rule, such procedure is permissable.

"The Court: The Court is fully cognizant of that. The Court has based its ruling on the stipulation. In thinking it over, I believe the Court will reverse itself insofar as refusing to permit the amendment and allow the amendment. However, I don't mind telling counsel, at this time, that in view of the stipulation, even though the amendment is there, I believe (the defense) is barred, but the pleadings may be amended. The Court will allow that.

"Mr. Chavez: In other words, the answer of the defendant, Regina Rowe, will be amended in accordance with the amendment I dictated into the record this morning?

"The Court: Correct."

It is to be admitted that confusion results from the contradictory nature of the trial court's ruling. In making the ruling the judge said, in effect, that he deemed barred by the stipulation the issue of fraud sought to be injected by the amendment; nevertheless, that he would permit the amendment. The record leaves it inconclusive as to just what was in the judge's mind. The irreconcilable implications arising from the opposite rulings, at most, seem to neutralize each other. Accordingly, we must endeavor to interpret and give them meaning, or establish a lack of it, in the light of the record.

If, as counsel for defendant strongly argue, the plaintiff waived the stipulation by litigating the issue of fraudulent concealment sought to be injected by the amendment, then the trial court's ruling becomes unimportant since the pleading can be amended in this court to conform to the proof. Canavan v. Canavan, 17 N. M. 503, 131 P. 493, Ann.Cas.1915B, 1064. On the other hand, if there was no acquiescence by plaintiff in litigating the questioned issue, by the same token the leave granted becomes innocuous since there is no proof to which the amending allegations of fraud may conform. Thus it is that we are sent to the bill of exceptions for a review of the testimony to find evidence of waiver by acquiescence. In order to constitute ac-

quiescence the plaintiff must voluntarily have joined in litigating an issue not pleaded which, by timely objection, he might have ruled out of the case. With this test in mind we turn to a review of the evidence.

As shown above, the sole issue reserved for trial under the stipulation was whether the $12,000 note, dated February 21, 1946, representing the partnership losses during the cropping year 1945, was secured by the two mortgages sued upon. The defendant was the mortgagor in each and the plaintiff, the mortgagee. It thus became a matter of intention between the parties as to what indebtedness the mortgages were given to secure. The plaintiff's testimony was direct and positive that they were to secure not only the $12,000 already owing, but also so much of an additional $12,000 agreed to be advanced as the partnership might call for. A recitation in each mortgage that it was to be security for "any indebtedness at any time owing by debtor to mortgagee" supported the plaintiff in its claim and testimony in this behalf.

The defendant, of course, testified with equal positiveness as her understanding that the two mortgages were only to secure payment of the $5,000 note described in the mortgages and future advances which, along with the amount of said note, would not exceed $24,000. With this sharp conflict in the testimony of plaintiff's witness, the officer who handled the transaction for plaintiff on the one hand, and the defendant herself on the other, it seems too obvious for dispute that evidence of any facts and circumstances having a tendency to influence the defendant's willingness or unwillingness to bind herself as surety for the partnership on these mortgages in accord with plaintiff's claim would be highly pertinent and material. The plaintiff could no more object to testimony having a tendency to influence her unfavorably toward inclusion of this past due indebtedness than could the defendant herself keep out testimony calculated to influence action favorable to its inclusion. Certainly, knowledge on defendant's part of the financial condition and standing, or lack of it, of the partnership bears directly on whether she intended to become surety for the partnership and for what.

■ Primarily, counsel argue that permitting cross-examination of plaintiff's officer on his failure to inform defendant that the partnership had no unincumbered assets, and his failure to advise her that the $12,000 then owing represented an operating loss for the preceding year, all without objection, amounted to acquiescence by plaintiff in litigating the issue of non-disclosure of material facts. When this cross-examination occurred plaintiff's counsel would have had to be possessed of a sixth sense to detect that defendant was slipping in, unobtrusively, an issue foreign

to the single one reserved for trial by the stipulation. Furthermore, no objection conceivable could have stopped this line of testimony since *it was material and relevant on the very issue reserved for trial.* Then why should a party be deemed to have waived something by failing to object to a line of cross-examination which he was powerless to prevent? A careful review of the record satisfies us that every item of testimony adduced by either party, and relied upon by defendant as voluntary acquiescence on plaintiff's part in litigating an unauthorized issue, was relevant and material on the sole question reserved for trial by the stipulation. It cannot be made the basis of waiver.

The trial court having found on substantial evidence that the $12,000 note was secured by the two mortgages as the parties intended, ordered their foreclosure to satisfy the sum of $13,310.52 adjudged due and attorney's fees of $1,963.85, plus interest. This appeal, raising the question hereinabove discussed and resolved, has resulted.

We should notice two of our former decisions before closing. The case of Putney v. Schmidt, 16 N.M. 400, 120 P. 720, strongly relied upon by counsel for defendant on the effect of fraudulent non-disclosure by a creditor to one about to become a surety for his debtor, in view of our conclusions, becomes unimportant as relating to an issue not here involved. Likewise, our for-

mer decision in the case of Jackson v. Gallegos, 38 N.M. 211, 30 P.2d 719, where we held an issue properly before the court because voluntarily litigated, if not actually open to litigation under a stipulation filed in the case, is removed from decisive consideration for lack of the waiver there found to exist.

The conclusions reached dispose of all questions necessary to a decision. Having found no error, the judgment below will be affirmed.

It is so ordered.

BRICE, C. J., and LUJAN, McGHEE, and COMPTON, JJ., concur.